OPINION
{¶ 1} Defendant-appellant Edward Perry appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of burglary and two counts of receiving stolen property, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 2, 2003, the Stark County Grand Jury indicted appellant on one count of receiving stolen property, in violation of R.C. 2913.51(A), in Case No. 2003CR1343. On December 9, 2003, the grand jury indicted appellant on two counts of burglary, in violation of R.C. 2911.12(A)(1), and two counts of receiving stolen property, in violation of R.C. 2913.51(A), in Case No. 2003CR1570. A jury trial commenced on the two burglary charges on January 21, 2004. The trial court bifurcated the receiving stolen property counts as they were unrelated to the burglary charges.
 {¶ 3} On the morning of trial, the trial court learned appellant, in a conversation with his court-appointed attorney, questioned whether he was ready to go forward with the trial. The trial court questioned Jean Madden, appellant's attorney, about her conversations with appellant. Madden informed the trial court, although appellant told her he had witnesses, he never gave her the names of those witnesses. Madden noted her communications with appellant at the county jail were less than fruitful, and he only wanted to talk to her about the receiving stolen property charges. Madden further stated appellant had not cooperated with her in the preparation of the matter, but she was as prepared as she could be to proceed with trial.
 {¶ 4} When provided with an opportunity to speak, appellant advised the trial court Attorney Madden never spoke to him about the burglary charges, and he believed he was in court on Case No. 1343, and did not understand what was going on here "at all." Appellant expressed his concerns about Attorney Madden's ability to properly represent him. The trial court reiterated the prosecutor's and Attorney Madden's attempts to resolve both cases, and appellant's repeated failure to assist in such resolution. The trial court further noted appellant's failure to cooperate, and attempts to have Attorney Wakser speak with him at the county jail. The trial court expressed its belief appellant was only cooperating at his own whim.
 {¶ 5} At trial, Aaron Dadisman testified he and his family returned to their residence at 2458, 31st Street, NE, Canton, Ohio at approximately 7:00 p.m. on October 27, 2003, after a night of shopping. Dadisman's mother-in-law remained at the residence because she is diabetic and has difficulty due to the loss of her legs. When the family returned home, they noticed an automobile parked in their shared driveway. Dadisman did not find this unusual as his neighbor often parked there. While he gathered packages from his car, the rest of the family entered the house. Dadisman's wife, Mary, entered the residence through the back door and saw a person standing in the kitchen-dining area. She alerted her husband and the stranger fled through the front door. After the stranger fled, Dadisman noticed the unfamiliar automobile was gone.
 {¶ 6} At approximately midnight on October 28, 2003, Dwayne Murray returned to his residence on Maple Avenue in Canton, Ohio, after an evening of poker. As he pulled his own vehicle into the driveway, he noticed a gold, two door Cadillac parked in the driveway. Through the window of the house, he noticed an individual inside the residence. Murray entered his home and confronted the stranger. When Murray asked the stranger what he was doing in his house, the stranger stated he was waiting for an individual by the name of Tyrone, who was upstairs. Murray proceeded upstairs to check on his wife and children. He grabbed his 9mm gun, ran back downstairs, and started to shoot at the stranger. The stranger ran to the gold Cadillac and sped away.
 {¶ 7} Canton Police Officer Charles Saler responded to a "shots fired" dispatch around 12:44 a.m. on October 28, 2003. He was advised of the burglary and informed the suspect was a white male in a black leather jacket driving a gold or yellow Cadillac. Saler successfully pursued the vehicle and ultimately arrested appellant.
 {¶ 8} After hearing all the evidence and deliberations, the jury found appellant guilty of one count of burglary with respect to the offense involving the Murray family. The jury found appellant not guilty with respect to the burglary charge involving the Dadisman family.
 {¶ 9} Following the jury's verdict, appellant withdrew his former pleas of not guilty to the two counts of receiving stolen property and entered pleas of guilty. The trial court accepted the pleas and proceeded to sentencing. The trial court sentenced appellant to eight years for the offense of burglary, and twelve months for each count of receiving stolen property. The trial court ordered the two counts of receiving stolen property be served concurrently to each other, and concurrently to the burglary charge, for an aggregate term of eight years in prison. The trial court further ordered appellant to pay a fine of $15,000. The trial court memorialized appellant's conviction and sentence via Entry January 29, 2004.
 {¶ 10} It is from this entry appellant appeals, raising the following assignments of error:
 {¶ 11} "I. Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the united states constitution because trial counsel failed to communicate with appellant in a manner that meets minimal standards of professional responsibility, failed to conduct an adequate investigation of appellee's case and failed to subpoena witnesses on defendant's behalf.
 {¶ 12} "II. Appellant was denied due process of law as guaranteed by the Fourteenth Amendment to the united states constitution and Article One, Section 10 of the Ohio Constitution, and was denied a fundamentally fair trial because appellant was not permitted to attend pretrial conferences and the state failed to provide defendant with notice of the trial date.
 {¶ 13} "III. The trial court's imposition of a $15,000 fine on appellant is contraryy to law and violates appellant's right to due process as guaranteed by the fourteenth amendment to the united States Constitution and Article One, Section 10 of the Ohio Constitution because there was no evidence before the court from which it could reasonably infer appellant had present or foreseeable ability to pay."
 I {¶ 14} In his first assignment of error, appellant raises an ineffective assistance of trial counsel claim. Specifically, appellant claims trial counsel was ineffective for failing to communiciate with appellant in a manner which met minimal standards of professional responsibility, failed to conduct an adequate investigation of appellant's case, and failed to subpoena witnesses on appellant's behalf.
 {¶ 15} The standard of review of an ineffective assistance of counsel claim is wellestablished. Pursuant to Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373; State v. Combs, supra.
 {¶ 16} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 17} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 18} With respect appellant's assertion trial counsel was ineffective for failing to communicate and failing to investigate, we find the record demonstrates any such failures were, in large part, a result of appellant's own doing. The record establishes appellant would only speak to Attorney Madden about matters about which he wanted to speak. Although he claimed he had witnesses, he never provided his attorney with any information regarding those potential witnesses. Assuming, arguendo, Attorney Madden's representation of appellant was deficient, we cannot say, with a reasonable probability, the outcome of the trial would have been different but for counsel's unprofessional errors. In fact, despite Attorney Madden's alleged failures, she was able to successfully defend one of the burglary charges on which appellant was being tried.
 {¶ 19} We now turn to appellant's contention trial counsel was ineffective for failing to subpoena an individual by the name of Tommy Cleveland, who was a passenger in the vehicle appellant was driving when he was arrested. The record establishes Cleveland was subpoened by the State, but failed to appear at trial. Appellant has not offered any indication as to the nature of Cleveland's testimony, and any such offer would be speculative at best. Attorney Madden's failure to subpoena Cleveland could be considered sound trial strategy. If Cleveland had responded to the State's subpoena and testified hostilely toward appellant, Attorney Madden could have cross-examined Cleveland. However, had Attorney Madden questioned Cleveland on direct examination, and Cleveland became hostile, such recourse would not have been available. Furthermore, we find appellant has failed to establish in the record before this Court he was prejudiced by Attorney Madden's failure to subpoena Cleveland.
 {¶ 20} Because appellant cannot demonstrate the outcome of his trial would have been different but for Attorney Madden's alleged deficiencies, we find he cannot satisfy the second prong of the Strickland test.
 {¶ 21} Appellant's first assignment of error is overruled.
 II {¶ 22} In his second assignment of error, appellant submits he was denied his due process rights and his constitutional right to a fair trial because he was not permitted to attend pretrial conferences and because the State failed to provide him with notice of the trial date.
 {¶ 23} We find, and appellant concedes, written notice of the trial date in compliance with Crim. R. 49(A) was prepared by the Clerk of Courts and sent to defense counsel, the prosecuting attorney, and the presiding judge; therefore, appellant received appropriate notice of trial. Additionally, the record does not affirmatively demonstrate appellant was not present at the courthouse for all pretrial proceedings.
 {¶ 24} Appellant's second assignment of error is overruled.
 III {¶ 25} In his third assignment of error, appellant argues the trial court's imposition of a $15,000 fine is contrary to law and violates his right to due process. Specifically, appellant maintains there was no evidence before the trial court from which it could reasonably infer appellant had an ability to pay such fine.
 {¶ 26} Pursuant to R.C. 2929.18(A)(3), a trial court may impose a fine of up to $15,000 for a felony of the second degree. However, "[b]efore imposing a financial sanction under section2929.18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6).
 {¶ 27} "[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." State v. Martin,140 Ohio App.3d 326, 338, 2000-Ohio-1942. Although a court may hold a hearing under R.C. 2929.18(E) "to determine whether the offender is able to pay the [financial] sanction or is likely in the future to be able to pay it," a court is not required to do so.State v. Stevens (Sept. 21, 1998), 12th Dist. No. CA98-01-001, unreported ("although the trial court must consider the offender's ability to pay, it need not hold a separate hearing on that issue"). "All that R.C. 2929.19(B)(6) requires is that the trial court consider the offender's present and future ability to pay." State v. Dunaway, 12th Dist. No. CA2001-12-280, 2003-Ohio-1062, at ¶ 36; Martin, 140 Ohio App.3d at 33
(Emphasis added).
 {¶ 28} Upon review of the transcript of the sentencing hearing, we find Attorney Madden objected to the impostion of the fine "due to [appellant's] unlikely ability to be gainfully employed to pay this fine in the foreseeable future." Tr. at 334. The trial court noted Attorney Madden's objection and imposed the fine, stating, "We will see how all that works out." Id. We find the record does not contain any evidence which the trial court could have considered to demonstrate appellant had a present and/or future ability to pay the fine imposed. Accordingly, we vacate the fine and remand the matter to the trial court for consideration of appellant's present and/or future ability to pay.
 {¶ 29} Appellant's third assignment of error is sustained.
 {¶ 30} The judgment of the Stark County Court of Common Pleas is affirmed in part, vacated in part and this case is remanded for further proceedings consistent with this opinion and the law.
Hoffman, P.J., Farmer, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part, vacated in part, and this matter remanded for further proceedings consistent with our opinion and the law. Costs to be divided equally.