[Cite as *State v. Gornall*, 2016-Ohio-7599.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ELLIOT T. GORNALL | : | Case No. 16-COA-002 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:  Appeal from the Ashland County
Court of Common Pleas, Case No.
15-CRI-084


JUDGMENT:  Affirmed


DATE OF JUDGMENT:  November 2, 2016


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHRISTOPHER R. TUNNELL           RUSSELL S. BENSING
Ashland County Prosecutor            600 IMG Building
                                                    1360 East Ninth Street
By: GARY D. BISHOP                     Cleveland, Ohio 44114
First Assistant Prosecutor
110 Cottage Street, Third Floor
Ashland, Ohio 44805

*Baldwin, J.*

{¶1} Appellant Elliot T. Gornall appeals a judgment of the Ashland County Common Pleas Court convicting him of sixty-six counts of illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(1)), six counts of attempted illegal use of a minor in nudity-oriented material or performance (R.C. 2923.02(A), (R.C. 2907.323(A)(1)), fifty-five counts of pandering obscenity involving a minor (R.C. 2907.321(A)(5)), forty-five counts of illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(3)), two counts of aggravated possession of drugs (R.C. 2925.11(A), possession of marijuana (R.C. 2925.11(A)), and receiving stolen property (R.C. 2913.51(A)).  Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On November 4, 2014, the Loudonville Police Department was contacted by the U.S. Department of Homeland Security in San Diego, California.  The U.S. Customs and Border Protection facility in San Diego had intercepted a package from overseas containing narcotics.  The package was addressed to appellant, who was employed as a kindergarten teacher by the Loudonville-Perrysville School District.  Capt. James Coey of the Loudonville police contacted the U.S. Postal Service to arrange a controlled delivery of the parcel, and obtained an anticipatory search warrant for appellant's residence.

{¶3} On November 13, 2014, Capt. Coey surveilled the residence along with other detectives while a postal inspector delivered the package.  Appellant retrieved the parcel and took it inside his residence.  Police entered shortly thereafter to conduct the search.  The detectives found marijuana, a marijuana smoking pipe, a firearm, the

delivered parcel of narcotics, and another parcel containing narcotics. In addition to the evidence of drug activity, they found fourteen pairs of little girls' panties and some soiled tissues next to appellant's bed. Inside a trunk behind his couch, detectives found a copy of a book titled "Show Me," containing graphic images of nude small children.

**{¶4}** Appellant told Capt. Coey that he ordered the drugs online from the Philippines, and he had ordered drugs from South Africa and other countries online as well. He later admitted that he had a sexual fetish for children's panties, and used them to masturbate. Officers seized appellant's computers and other electronic devices.

**{¶5}** Police obtained a second search warrant on November 26, 2014, to search the contents of the seized computers for evidence related to trafficking in drugs and pandering obscenity involving a minor. Agents of the Bureau of Criminal Identification & Investigation (BCI&I) conducted the search of the hard drive of appellant's computer using forensic software. Nicholas Jenkins began by searching for evidence of narcotics activity. The search revealed that pictures were stored in the image files. While looking through the image files for evidence of drug activity, Jenkins found images and videos of nude children performing sexual acts, and also found videos of small children using the restroom.

**{¶6}** After the search, the Ohio Supreme Court published its decision in *State v. Castagnola*, 145 Ohio St. 3d 1, 2015-Ohio-1565, 46 N.E.3d 638. After reviewing the case, the State obtained a third search warrant to insulate the search of the computers in light of that decision. The third warrant was obtained on June 10, 2015, and yielded the same results as the November 26, 2014 search warrant.

**{¶7}** Further investigation revealed that appellant had placed a hidden camera in the private restroom of his kindergarten classroom, and surreptitiously videotaped his students using the restroom, exposing their genitalia to the hidden camera.

**{¶8}** Appellant was indicted with sixty-six counts of illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(1)), six counts of attempted illegal use of a minor in nudity-oriented material or performance (R.C. 2923.02(A), (R.C. 2907.323(A)(1)), fifty-five counts of pandering obscenity involving a minor (R.C. 2907.321(A)(5)), forty-five counts of illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(3)), two counts of aggravated possession of drugs (R.C. 2925.11(A), possession of marijuana (R.C. 2925.11(A)), and receiving stolen property (R.C. 2913.51(A)).

**{¶9}** Appellant filed a motion to suppress evidence seized from the search of the computers. The trial court denied the motion after hearing, finding that evidence of pandering obscenity of minors would have been inevitably discovered during the search for evidence of narcotics activity. Appellant then pled no contest to all charges and was sentenced to an aggregate prison term of fifty-six years, with an aggregate fine of $15,700.00.

**{¶10}** Appellant assigns three errors on appeal:

**{¶11}** "I. THE JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, IN DEROGATION OF DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

**{¶12}** "II.   THE RECORD CLEARLY AND CONVINCINGLY DEMONSTRATES THAT THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES IS UNSUPPORTED.

**{¶13}** "III.   THE TRIAL COURT ERRED IN IMPOSING A TOTAL FINE OF $15,700 ON DEFENDANT."

I.

**{¶14}** In his first assignment of error, appellant argues that the trial court erred in overruling his motion to suppress evidence of child pornography taken from his computer, as the warrant was issued pursuant to an affidavit which failed to set forth probable cause that such evidence would be located on his computer.

**{¶15}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently

determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶16} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶17} Appellant does not argue that the affidavit lacked probable cause to search the computer for evidence of narcotics activity. The trial court found that in searching for evidence of narcotics activity, evidence of child pornography would have been inevitably discovered, and did not address the issue of whether the affidavit was sufficient to provide probable cause to search the computer for evidence of child pornography.

{¶18} Pursuant to the inevitable discovery doctrine, illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. *State v. Perkins*, 18 Ohio St.3d 193, 196, 480 N.E.2d 763 (1985), citing *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The inevitable discovery doctrine is applied only in limited circumstances where the state can show by a preponderance of

the evidence that, despite the constitutional violation, discovery of the evidence was, in fact, inevitable. *Id.* at 766-767.

{¶19} Nicholas Jenkins of BCI&I testified that he began by searching for evidence of narcotics activity in the web history, and for images of drug paraphernalia or pictures of drugs. Supp. Tr. 34. He found two images depicting drug activity. Supp. Tr. 34-35. In searching in the image files for the pictures of narcotics, images of child pornography showed up. Supp. Tr. 35. He could not look for evidence probative of drug activity without finding the images of child pornography. Supp. Tr. 35. Although the warrant specified that he was looking for evidence of child pornography or pandering obscenity involving a minor, he began first searching for evidence of drug activity. Supp. Tr. 43. The evidence he found of child pornography was in the files he would have been looking through to find evidence of drug activity. Supp. Tr. 44. Based on Jenkins's testimony, the trial court did not err in finding that discovery of the evidence of child pornography and pandering obscenity involving a minor was inevitable.

{¶20} Appellant argues that the discovery of the evidence could not be "inevitable" because the search warrant specifically allowed Jenkins to search for evidence of child pornography and pandering. However, Jenkins testified that he began his search with a search for evidence of narcotics activity, and discovered the pornography in the files he was looking at to find evidence of drug activity.

{¶21} Appellant also argues that the discovery could not be "inevitable" because Jenkins searched the entire computer, in violation of the Ohio State Supreme Court's decision in *State v. Castagnola*, 145 Ohio St. 3d 1, 2015-Ohio-1565, 46 N.E.3d 638.

**{¶22}** In *Castagnola,* the affidavit provided to obtain the search warrant stated that the defendant said he found the victim's address "online in the clerk of courts." Execution of the warrant led to the seizure of two computers. A search of the contents of the computers revealed over a thousand videos and images of child pornography. The Ohio Supreme Court ultimately found the search warrant for the computers was not supported by probable cause to believe a computer in the defendant's residence was used in furtherance of the alleged crimes, as the defendant did not actually use the word "online" in his interview with the detective concerning where he found the victim's address. *Id.* at ¶10.

**{¶23}** The court then went on to address the particularity requirement of the Fourth Amendment as it pertains to the search of files on a computer. The warrant described the objects subject to seizure from the defendant's home as "[r]ecords and documents either stored on computers, ledgers, or any other electronic recording device." A separate section states that if found, said items will be used as evidence in the prosecution of retaliation, criminal trespassing, criminal damaging, and possession of criminal tools.

**{¶24}** In finding the warrant was not sufficiently particular, the court noted first that the warrant did not guide or control the analyst's discretion as to what was to be seized on the computer, allowing her to look at all the evidence on the hard drive to determine what to seize. *Id.* at ¶83. Second, the broad language clearly included items that were not subject to seizure. *Id.* at ¶84. The state argued that nothing in the record suggested that the police knew ahead of time precisely where the items were stored. The court held that the particularity issue did not relate to where the information was stored, but rather

"what" evidence the detective had a fair probability of believing was on the computer. *Id.* at ¶85.

**{¶25}** In *Castagnola,* the detective believed the defendant found the victim's address online, and that evidence of the online search would be useful in the prosecution of the offenses. He testified that in addition to a general Google search or online-white-pages search, he believed the defendant might have searched the clerk of courts' website for information about the victim. The detective testified that from his previous experience, he knew that an online search would create a cookie. Under the Fourth Amendment, these details should have been included in the warrant to guide and control the searcher, and sufficiently narrow the category of records subject to seizure. *Id.* at ¶87.

**{¶26}** However, the court rejected the contention that the Fourth Amendment requires the warrant to specify restrictive search protocols:

> In urging this court to find that the search warrant sufficiently particularized the items to be searched for, the state provides a breadth of authority rejecting the notion that a search warrant must contain a restrictive protocol, methodology, or other strategy for conducting the search in order to satisfy the Fourth Amendment. We agree that the Fourth Amendment does not require a search warrant to specify restrictive search protocols, but we also recognize that the Fourth Amendment does prohibit a "sweeping comprehensive search of a computer's hard drive." *Walser,* 275 F.3d at 986. The logical balance of these principles leads to the conclusion that officers must describe what they believe will be found on a computer with as much specificity as possible under the circumstances. This will enable the

searcher to narrow his or her search to only the items to be seized. Adherence to this requirement is especially important when, as here, the person conducting the search is not the affiant. *See generally United States v. Gahagan,* 865 F.2d 1490, 1498–1499 (6th Cir.1989).

**{¶27}** *Id.* at ¶88.

**{¶28}** Appellant argues that the warrant in the instant case allowed the same sweeping comprehensive search of the hard drive as the warrant in *Castagnola.* We disagree. Appellant argues the warrant and affidavit should have narrowed the search to files where evidence of his drug trafficking activity could be found, such as internet search history and bookmarks, and payment programs such as Quicken and Excel. However, *Castagnola* specifically states that the Fourth Amendment does not require a search warrant to specify restrictive search protocols. Further, unlike the detective in *Castagnola* who testified specifically as to where he expected evidence of the search for the address to be, the record in the instant case does not support a conclusion that the officers possessed any more specificity as to the location of computer files concerning appellant's drug activity than set forth in the affidavit. The warrant provided sufficient guidance to the analyst to search for only the items to be seized: evidence of possession of drugs and trafficking in drugs, and/or pandering obscenity involving a minor.

**{¶29}** Jenkins testified that because of the way computer systems work, you can put things anywhere, "safe" files anywhere. Supp. Tr. 35-36. He testified that he does not search all the files on the computer, and tries to limit the search to what is pertinent in the case. Supp. Tr. 41. For example, they do not look at the pre-installed Windows files that come with the operating system. Supp. Tr. 41. He further testified that it is

necessary to look at the content of the files because file names don't necessarily represent what the files are. Supp. Tr. 44. In the instant case, evidence of drug possession or trafficking activity concerning appellant's admitted online purchases of narcotics could have been "hidden" almost anywhere on the computer. The instant case is distinguishable from *Castagnola,* where the only evidence regarding the use of the defendant's computer in furtherance of the crime was an inference drawn by the police officer that he might have found the victim's address through an online search. Under the circumstances of the instant case, the warrant set forth what the officers believed would be found on the computer with as much specificity as possible.

{¶30} The first assignment of error is overruled.

II.

{¶31} In his second assignment of error, appellant argues that the court erred in imposing consecutive sentences.

{¶32} The two-step approach set forth in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. We now review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum,* —— Ohio St.3d ——, 2016–Ohio–1002, —— N.E.3d ——, ¶ 22. R.C. 2953.08(G)(2) provides that we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28.

**{¶33}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.

**{¶34}** R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a)  The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the

courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶35} Appellant concedes that the court made the findings required by the statute to impose consecutive sentences, but argues that consecutive sentences are disproportionate to the seriousness of his conduct. He argues that he had no criminal history, none of his students he videotaped in the bathroom were aware that they were being taped, and the only person who saw the videos was appellant.

{¶36} A felony sentence should be proportionate to the severity of the offense committed so as not to "shock the sense of justice in the community." *State v. Chafin,* 30 Ohio St.2d 13, 17, 282 N.E.2d 46; R.C. 2929.11(B). A defendant alleging disproportionality in felony sentencing has the burden of producing evidence to "indicate that his sentence is directly disproportionate to sentences given to other offenders with similar records who have committed these offenses." *State v. Ewert,* 5th Dist. Muskingum No. CT2012–0002, 2012–Ohio–2671, ¶ 33, citing *State v. Breeden,* 8th Dist. No. 84663, 2005–Ohio–510, ¶ 81.

{¶37} Appellant did not present evidence that his sentence is directly disproportionate to sentences given other offenders with similar records who have committed the same offenses. Further, this Court has previously stressed the strong interest of the government in safeguarding the physical and psychological well-being of children and in preventing their sexual exploitation:

In *Duhamel,* supra, 2015–Ohio–3145, the court cited *New York v. Ferber,* 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), recognizing the government's interest in safeguarding the physical and psychological well-being of children and in preventing their sexual exploitation:

"Every video or image of child pornography on the internet constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation. *Id.* The videos in [appellant's] library show eight, nine, and ten-year old girls being vaginally raped by adult men. Adult men are seen video-recording and photographing young girls while they are being molested, raped, and abused. These videos are far worse than solitary photographs of naked children, which are themselves harmful to the child victims. [Appellant] downloaded the videos at different times as part of a course of conduct. Therefore, the record supports the court's finding that consecutive sentences are proportionate to the seriousness of [appellant's] crimes, are necessary to punish [appellant] for his multiple downloads of child pornographic material, and to protect the public." *State v. Duhamel,* 8th Dist. Cuyahoga No. 102346, 2015–Ohio–3145, ¶ 55.

{¶38} *State v. Starcher,* 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250, ¶42.

{¶39} Further, the Ohio Supreme Court has recently stressed the seriousness of child-nudity-oriented material, even if such material is not pornographic as defined by statute:

This case revolves around R.C. 2907.323(A)(1), which prohibits the creation of child-nudity-oriented material, whether or not pornographic. We consider the difference between child-nudity-oriented material and child pornography a matter of degree, not of kind. All the state interests that apply to eliminating child pornography apply to eliminating child-nudity-oriented material. Even if child-nudity-oriented material is less harmful to the child depicted than child pornography, it is undeniably harmful. Even if child-nudity-oriented material is less exploitative of a child than child pornography, it is undeniably exploitative. Similarly, child-nudity-oriented material leaves a permanent record that can haunt a child into adulthood and provides an economic incentive to its purveyors and possessors.

**{¶40}** *State v. Martin,* Slip Opinion No. 2016-Ohio-7196, ¶12.

**{¶41}** In the instant case, appellant's conduct went beyond the mere creation and possession of child-nudity-oriented material. He created the videos by surreptitiously taping his own students using the restroom. According to the information provided at the sentencing hearing, appellant requested that he be moved to a kindergarten classroom, which gave him access to the youngest children within the school system, as well as the only classroom in the school district with a private restroom attached to the classroom. As a kindergarten teacher, appellant occupied a position of trust, not only as to the students entrusted to his care, but also to the families who entrusted their children to him. Appellant violated that trust by his actions. The victim impact statements included in the presentence investigation report filed in this case demonstrate the extreme emotional harm to the parents of the children who were videotaped, and while most of the children

were unaware that they were taped, they experienced confusion and educational disruption from appellant's removal from their classroom during their kindergarten year. Consecutive sentences were not disproportionate to appellant's conduct in the instant case.

{¶42} Further, while appellant argues in his brief that he could have committed the crime of rape against his fellow teachers and not have received a fifty-six year sentence, the concept of disproportionality relates to sentences received by other offenders who have committed the *same* offenses, not to sentences received for *different* offenses. The decision as to what sentences are appropriate for specific offenses or classes of offenses is a legislative function, not a judicial function.

{¶43} The second assignment of error is overruled.

III.

{¶44} In his third assignment of error, appellant argues that his fine of $15,700, or $100 per offense, is an abuse of discretion.

{¶45} The decision to impose or waive a fine rests within the sound discretion of the court and will not be reversed on appeal absent an abuse of that discretion. *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750. (1998). The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶46} As this Court explained in *State v. Perry,* 5th Dist. No.2004-CA-00066, 2005-Ohio-85:

There are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record.' *State v. Martin,* 140 Ohio App.3d 326, 338, 747 N.E.2d 318, 2000-Ohio-1942. Although a court may hold a hearing under R.C. 2929.18(E) 'to determine whether the offender is able to pay the [financial] sanction or is likely in the future to be able to pay it,' a court is not required to do so. *State v. Stevens* (Sept. 21, 1998), 12th Dist. No. CA98-01-001, unreported ('although the trial court must consider the offender's ability to pay, it need not hold a separate hearing on that issue'). 'All that R.C. 2929.19(B)(6) requires is that the trial court consider the offender's present and future ability to pay.' *State v. Dunaway,* 12th Dist. No. CA2001-12-280, 2003-Ohio-1062, at 36; *Martin,* 140 Ohio App.3d at 33, 746 N.E.2d 642" *Id.* at *4-5, 746 N.E.2d 642. See also *State v. Thompson,* 5th Dist. No. 06-CA-62, 2008-Ohio-435, at ¶ 19. While it would be preferable for the trial court to expressly state on the record that it has considered a defendant's present and future ability to pay a fine, it is not required. *State v. Parker,* 2nd Dist. No. 03CA0017, 2004-Ohio-1313, ¶ 42, citing *State v. Slater,* 4th Dist. No. 01 CA2806, 2002-Ohio-5343. "The court's consideration of that issue may be inferred from the record under appropriate circumstances." *Id.*

**{¶47}** The trial court made a finding that appellant had the future ability to pay a financial sanction, which is supported by the information set forth in the PSI filed under seal with this Court. Although in aggregate the fine appears large, the court noted that $100 per offense is not a significant financial sanction. Sent. Tr. 41. Appellant presented

no evidence concerning his future ability to pay.  The trial court did not abuse its discretion in the fine imposed in this case.

**{¶48}**  The third assignment of error is overruled.

**{¶49}**  The judgment of the Ashland County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. concurs.

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

{¶50} I concur in the majority's analysis and disposition of Appellant's first and third assignments of error.

{¶51} I further concur in the majority's disposition of Appellant's second assignment of error. However, I continue to maintain the disproportionality analysis under R.C. 2929.14(C)(4) is different from the disproportionality analysis under R.C. 2929.11(B). The former focuses on the defendant's conduct whereas the latter focuses on the defendant's sentence compared to similar offenders.[1]

{¶52} Nevertheless, I concur because Appellant's argument herein only alleges disproportionality with respect to R.C. 2929.11(B). Accordingly, any further analysis of the propriety of imposing consecutive sentences for any of the 172 individual counts involving child nudity-oriented material is unnecessary.

---

[1] For a further discussion, see my dissent in *State v. Cooper*, 5th Dist. Ashland App. No. 14-COA-039, 2016-Ohio-5064.