[Cite as *State v. Ludwig*, 2021-Ohio-383.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| TODD LUDWIG | : | Case No. CT2020-0008 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. CR2019-0272




JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                February 10, 2021




APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

TAYLOR BENNINGTON                     JAMES A. ANZELMO
27 North Fifth Street                 446 Howland Drive
P.O. Box 189                          Gahanna, OH  43230
Zanesville, OH  43702

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Todd Ludwig appeals the December 19, 2019 judgment of conviction and sentence of the Muskingum County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} A recitation of the underlying facts in this matter is unnecessary for our resolution of this appeal.

{¶ 3} On May 16, 2019, the Muskingum County Grand Jury retuned an indictment charging Ludwig as follows:

{¶ 4} Count one – trafficking in drugs (methamphetamine) a felony of the first degree;

{¶ 5} Count two – possession of drugs (methamphetamine) a felony of the second degree;

{¶ 6} Count three – engaging in a pattern of corrupt activity, a felony of the second degree; and

{¶ 7} Count four – possession of criminal tools, a felony of the fifth degree.

{¶ 8} Counts one through four contained various firearm and forfeiture specifications. The forfeiture specifications pertained to cash, real estate, and 18 guns.

{¶ 9} On September 18, 2019, Ludwig pled guilty to count one of the indictment and the attendant firearm and forfeiture specifications. The state dismissed the balance of the indictment. A sentencing hearing was held on December 18, 2019, following completion of a pre-sentence investigation. The trial court sentenced Ludwig to a mandatory minimum 10-year prison term, and an indefinite term of 15 years pursuant to

the Regan Tokes Act. Ludwig filed an affidavit of indigence which indicated he is disabled, and moved the trial court to waive the mandatory fine. The trial court denied the motion and imposed a mandatory fine of $10,000.

{¶ 10} Ludwig filed an appeal and the matter is now before this court for consideration. He raises three assignments of error for our review as follow:

I

{¶ 11} "AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

II

{¶ 12} "TODD LUDWIG RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

III

{¶ 13} "THE TRIAL COURT ERRED BY DENYING LUDWIG'S MOTION TO WAIVE THE MANDATORY FINE."

I, II

{¶ 14} Ludwig's first and second assignments of error challenge the constitutionality of the Regan Tokes Act which codified hybrid indefinite prison terms for first and second degree felonies. In his first assignment of error, Ludwig challenges the presumptive release feature of the act, R.C. 2967.271, arguing it violates his constitutional rights to trial by jury and due process of law, and further violates the constitutional

requirement of separation of powers and equal protection. In his second assignment of error, Appellant argues his trial counsel provided ineffective assistance by failing to raise the constitutionality of R.C. 2967.271 in the trial court during his sentencing hearing.

{¶ 15} R.C. 2967.271 provides in relevant part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security

of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date,

after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the

hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶ 16} Ludwig argues these portions of R.C 2967.271 permitting the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. However, as the state points out, Ludwig has not yet been subject to the application of

these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

{¶ 17} We addressed the concept of ripeness for review in regard to the Regan Tokes Act in *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227:

> The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:
>
> Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:
>
> The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the

defendant foretells legal injury to the plaintiff. Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. *Id.* at 89, 694 N.E.2d at 460.

In *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued because the Parole Board, pursuant to R.C. 2967.28, could extend his sentence by up to an additional five years for violation of post-release control, the statute was unconstitutional. The Eighth District Court of Appeals concluded because McCann was not currently the subject of such action by the Parole Board, the issue was not yet ripe for review. Id. at ¶6.

Likewise, in the instant case, while R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his nine year minimum sentence and potentially continue his incarceration to a term not exceeding thirteen years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review.

{¶ 18} *Downard*, at ¶8-11. See also, *State v. Buckner*, 5th Dist. Muskingum Nos. CT2020-0023 & CT2020-0024, 2020-Ohio-7017; *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501; *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329; *State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631.

{¶ 19} Ludwig does not dispute he had not yet been subject to the provisions of R.C. 2967.271. We therefore find here as we did in *Downard*, Ludwig's constitutional challenges and his trial counsel's failure to raise the same are not yet ripe for review.

{¶ 20} Ludwig's first and second assignments of error are overruled.

III

{¶ 21} In his final assignment of error, Ludwig challenges the trial court's imposition of the mandatory $10,000 fine arguing it had failed to consider his ability to pay the same. We disagree.

{¶ 22} We review a decision to impose a financial sanction for an abuse of discretion. *State v. Gibson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 23} R.C. 2929.18(B)(1) establishes a procedure for avoiding imposition of mandatory fines applicable to certain felony drug offenses. That section provides:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this

division, the court shall not impose the mandatory fine upon the offender.

{¶ 24} This Court addressed a trial court's duties when imposing a financial sanction in *State v. Perry*, Stark App. No. 2004-CA-00066, 2005-Ohio-85:

" '[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record.' *State v. Martin*, 140 Ohio App.3d 326, 338, 747 N.E.2d 318, 2000-Ohio-1942. Although a court may hold a hearing under R.C. 2929.18(E) 'to determine whether the offender is able to pay the [financial] sanction or is likely in the future to be able to pay it,' a court is not required to do so. *State v. Stevens* (Sept. 21, 1998), 12th Dist. No. CA98-01-001, unreported ('although the trial court must consider the offender's ability to pay, it need not hold a separate hearing on that issue'). 'All that R.C. 2929.19(B)(6) requires is that the trial court *consider* the offender's present and future ability to pay.' *State v. Dunaway*, 12th Dist. No. CA2001-12-280, 2003-Ohio-1062, at 36; Martin, 140 Ohio App.3d at 33, 746 N.E.2d 642 (Emphasis [original])." *Id.* at *4-5.

{¶ 25} *Perry* at ¶ 28.

{¶ 26} The statute places the burden "upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the mandatory fine." (Emphasis original) *State v. Gipson* 80 Ohio St.3d 626, 635, 687 N.E.2d 750 (1998). Additionally, a trial court need not affirmatively find that an offender is able to pay. *Id.* Instead, the fine is mandatory unless the offender establishes current indigence and an inability to pay. *Id.*

{¶ 27} Before the sentencing hearing, Ludwig provided an affidavit of indigence. During the sentencing hearing, the following discussion on the matter took place:

> The Court: * * * There's also a motion to waive mandatory fines in this case. I'm going to deny that motion based upon the level of drug trafficking here, as well as the forfeiture specification
>
> I mean, obviously, we all know that when you have the types of weapons and weaponry that Mr. Ludwig had, there's a lot of cash involved with that, and I am going to deny it.
>
> [Counsel for Ludwig]: Your Honor, can I just speak to that for just a moment –
>
> The Court: Yes.
>
> [Counsel for Ludwig]: -- with regard to the guns?
>
> The Court: Yes.
>
> [Counsel for Ludwig]: Several of those guns were in a gun safe locked. They were not out. They were just in a gun safe locked. I believe some of those guns were his father's. There were I believe

three guns that were out, located. And so, that's why there was a gun spec associated with that.

So, with that being said, I would just ask – I would want the Court to note that for the record. It was not that there was a stockpile of weapons out along with these drugs. They were in the house.

The Court: I took it they were in the safe.

[Counsel for Ludwig]: Correct.

The Court: I read that, I was aware of that.

[Counsel for Ludwig]: Okay. I just – I just wanted the Court to know. Obviously, we're dealing with the house and then we're dealing with the garage, where there was most of the drug activity there.

The Court: All right. Thank you. So noted.

It says here you're disabled. What's the nature of your disability?

[Ludwig]: I got one lung and my leg's – I can't move my right leg from the hip her down. I have compartment syndrome.

The Court: I understand. I read that. So what can't you do? You can't walk?

[Ludwig]: Yeah, I can walk but it's – I don't have no blood circulation left in my leg, and I don't know if –

The Court: Because it doesn't say here, how much do you receive a month in disability?

[Ludwig]: Like $800. 796.

The Court: so you're on SSI?

[Ludwig]: Yeah.

[Counsel for Ludwig]: Your Honor, there is a concern that his leg would eventually – if he's not going to get circulation into it – would have to be amputated.

The Court: Okay. Thank you.

{¶ 28} We find this inquiry by the trial court sufficient to reflect the court's consideration of Ludwig's present and future ability to pay the fine.

{¶ 29} The final assignment of error is overruled.

{¶ 30} The judgment of conviction and sentence of the Muskingum County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Hoffman, J. concurs

Gwin, P.J. concurs in part, dissents in part.

EEW/rw

*Gwin, P.J., concurs in part; dissents in part*

{¶31}  I concur in the majority's disposition of Appellant's Third Assignment of Error.

{¶32}  I respectfully dissent from the majority's opinion concerning ripeness and Appellant's First and Second Assignments of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio-5501.

{¶33}  I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of  whether the constitutionally of the Reagan Tokes Act is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table); *State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal accepted on Appellant's Proposition of Law No. II, State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*).