[Cite as *State v. Ramirez*, 2018-Ohio-595.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J. |
| -vs- | Case No's. 16CA95, 16CA96 |
| CHRISTEN RAMIREZ | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Richland County Court of Common Pleas, Case No's. 2015CR0755, 2015CR0700

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: February 14, 2017

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
Richland County, Ohio

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

JEFFREY P. UHRICH
Law Office of Jeffrey P. Uhrich
P.O. Box 1977
Westerville, Ohio 43086

*Hoffman, J.*

{¶1}   Appellant Christen Ramirez appeals the judgment entered by the Richland County Common Pleas Court convicting him of aggravated murder (R.C. 2903.01(B), four counts of kidnapping (R.C. 2905.01), two counts of aggravated burglary (R.C. 2911.11), robbery (R.C. 2911.02), tampering with evidence (R.C. 2921.12), two counts of aggravated robbery (R.C. 2911.01), and injuring animals (R.C. 959.92), with firearm and repeat violent offender specifications, and sentencing him to an aggregate term of 112 years incarceration to be served consecutively to a term of life imprisonment without possibility of parole.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   In the early morning hours of June 24, 2015, Uvon Burns was asleep in her bedroom when she awoke to a man pointing a gun at her, demanding drugs and money. When her dog moved to protect her, the intruder shot the dog.  She had no drugs, but tossed her purse at him which contained her tip money from bartending at the American Legion the night before.  He picked up the purse and ran.

{¶3}   Burns discovered her boyfriend, Jason O'Neal, had climbed into bed with her after she fell asleep.  He laid still so the intruder would not see him.  He heard the intruder ask for weed and money.  He saw the silhouette of a man in a grey hoodie drawn tight, holding a gun.  He noted a tattoo on the intruder's hand, and a pair of Nike boots he had earlier seen on Appellant.  He was later able to identify Appellant by his voice as well as the tattoo and boots.

{¶4} Burns and O'Neal called the police and discovered the intruder gained entry into the home by kicking the panel out of the front door. The dog survived after receiving emergency veterinary care.

{¶5} At two o'clock that morning, Appellant's co-defendant Marcelluis Luckie woke up his girlfriend, Andrea McDowell, to tell her Burns had been robbed and her dog had been shot. McDowell and Burns were coworkers and friends. Luckie claimed he heard about the incident from his friend George Kelly. He insisted they check on Burns the next morning, and they drove to Burns' house. Luckie told Burns and O'Neal he was sorry about their dog. O'Neal found it strange Luckie knew about the dog because the incident was not yet public knowledge.

{¶6} On June 25, 2015, Christshanda Webb was at the home of her brother, Myron Webb, waiting for a cable service installer to arrive. She heard a knock on the back door. She checked the front of the house for a cable van, but no one was there. Others in the house checked the rear door and found Appellant attempting to force his way into the house. When he noticed people in the house, he ran. Christhanda walked up the street in the direction Appellant was headed. She saw Luckie approach driving a black Pontiac, and Appellant jumped on the hood.

{¶7} Shamille Chapman and her baby were asleep on the couch on June 26, 2015, when she awoke to find Appellant and Luckie standing over her, asking for money and drugs. Luckie held a gun, and Appellant held a crowbar. Luckie was wearing a black Ohio State hoodie, a mask, gloves, and Hello Kitty glasses. Appellant was dressed in all black. Appellant took electronics from the house and put them in bags. The men asked her to have her son come downstairs, and they held him at gunpoint with Chapman. The

men demanded she call her boyfriend, Myron Webb, to ask him to come home, and threatened her if she warned him something was amiss. She called Webb and asked him to come home. The men continued to ransack the house while waiting for Webb to arrive, asking her to call Webb multiple times. Appellant and Luckie tied up Chapman's son with t-shirts and an electrical cord.

{¶8} When Webb arrived home, the men ordered him to the ground. They told Webb they heard he had "bricks." Webb responded he did not have drugs, but gave them his money. Unhappy with what they had received, the men planned to stay all night and have Webb withdraw money from the bank for them the next morning. They told Webb they would put a pillowcase over his head and take the baby with them. Webb asked them not to involve his family. When they ordered Webb to walk toward the kitchen, Webb charged the men. Chapman grabbed the baby and ran into the kitchen where her son was tied up. She got outside with her son and the baby and screamed for the neighbors to call 911.

{¶9} After seeing Appellant and Luckie run away, Chapman went back into the house where she found Webb rolling around on the ground, bleeding from stab wounds to his head, neck, back, and upper arms. He was transported to the hospital where he died the following day. The medical examiner found twenty-five stab wounds on Webb.

{¶10} During the afternoon of June 26, 2015, O'Neal saw Appellant with a group of people gathered outside a friend's house. During a conversation, O'Neal recognized Appellant's voice from the break-in on June 24, 2015. O'Neal punched Appellant and choked him. After he was beaten by O'Neal, Appellant called his grandfather and told him to get rid of bullets and a pair of "Jordans" which were at his house. Appellant then

called Luckie and told him he got beat up over shooting O'Neal's dog.  Appellant changed his shoes at his house and his clothes at his mother's house before going to the hospital, where he claimed his injuries were the result of a fall from a tree.

{¶11} Chapman's neighbors reported seeing Appellant and Luckie flee the scene of the attack on Webb in a black Pontiac Grand Prix.   When police went to Appellant's house to question witnesses, they found a black Pontiac which they identified as the vehicle they were looking for in connection with Webb's murder.  Police could see blood on the steering wheel and a tire iron in the car.  They found the vehicle was registered to McDowell.  Blood was later discovered on the driver's side door, the steering wheel, and the center console lid.  DNA testing from the steering wheel cover showed a DNA mixture including Webb and Appellant.  Webb's blood was also found under the passenger door handle and at two locations on the driver's seat.

{¶12} Appellant was indicted in case number 2015-CR-0700 with aggravated burglary, two counts of aggravated robbery, and one count of injuring animals, with firearm specifications, for the events of June 24, 2015.   He was indicted in case number 2015-CR-0755 on two counts aggravated murder, four counts kidnapping, aggravated burglary, robbery, and tampering with evidence with firearm and repeat violent offender specifications for the events of June 25, 2015.  The indictments were consolidated for trial, and consolidated with the charges against co-defendant Luckie for trial.  The case proceeded to jury trial.  Appellant was convicted of all counts except one of the two counts of aggravated murder.  He was sentenced to a term of life imprisonment without possibility of parole on the aggravated murder conviction, and an aggregate of 112 years

incarceration on the remaining charges, to be served consecutively.  From the judgments of conviction and sentence Appellant prosecutes this appeal, assigning as error:

"I.   THE TRIAL COURT ERRED BY JOINING THE SEPARATE OFFENSES CHARGED IN TWO SEPARATE CASES, NAMELY STATE V. RAMIREZ, CASE NO. 2015 CR 0700 AND STATE V. RAMIREZ, CASE NO 2015 CR 0755, IN ONE TRIAL.

"II.   THE TRIAL COURT ERRED WHEN IT JOINED DEFENDANT RAMIREZ'S CASES WITH DEFENDANT LUCKIE'S CASES IN ONE TRIAL.

"III.   THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION FOR NEW TRIAL UNDER BRUTON V. UNITED STATES (1968), 391 U.S. 123.

"IV.   THE TRIAL COURT ERRED WHEN IT PERMITTED (OVER OBJECTION) IN COURT IDENTIFICATION FROM CERTAIN PROSECUTION WITNESSES OF DEFENDANT RAMIREZ AS THE PERPETRATOR OF THE CRIMES CHARGED.

"V.   THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS EVIDENCE OBTAINED FROM A VEHICLE (1999 BLACK PONTIAC GRAND PRIX) PURSUANT TO IMPROPERLY ISSUED OR INVALID SEARCH WARRANTS.

"VI.   THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON FACTORS TO CONSIDER REGARDING EYEWITNESS TESTIMONY AS PROPOSED BY DEFENDANT RAMIREZ."

I.

**{¶13}** Appellant argues the court erred in joining his two separate indictments into one trial.  The State moved for joinder of offenses and defendants.  Appellant objected to joinder, and the trial court held a hearing on the motion.  Following the hearing, the court ruled as follows:

This matter came before the Court upon the motion of the State of Ohio to consolidate all of the above cases for one jury trial.  The Court finds that Defendant Marcellus [sic] Luckie and Defendant Christian [sic] Ramirez have each been indicted for the same criminal activity as co-defendants. The criminal activity that each defendant has been indicted with relates to a home invasion type of robbery and burglary that occurred on June 23, 2015 and another similar type of home invasion type of robbery and burglary that occurred on June 26, 2015.  In the second offense the State of Ohio alleges that the defendants while acting together murdered Myron Webb. The State contends that all of these offenses were committed as a part of a course of criminal conduct by those defendants while they were acting together.

Based on the arguments of the parties the Court believes that all of these offenses should be consolidated for one trial. Defendant Ramirez, through counsel, has raised the issue that a single statement made by Defendant Luckie to a witness could be used by the State of Ohio to incriminate Defendant Ramirez.

The statement in question on its face does not incriminate Defendant Ramirez. However, the statement could be used to infer Defendant Ramirez's guilt and therefore the Court will not permit the State of Ohio to introduce that particular single statement at the joint trial. This will alleviate any possible Bruton issue and there is no reason not to consolidate the cases for a single trial.

Judgment Entry, August 18, 2016.

{¶14} Joinder of offenses is governed by Crim. R. 8(A), which states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. *See, State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist. Cuyahoga 1995).

{¶15} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist. Henry 1988).

{¶16} A Crim.R. 14 motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. *Strobel, supra,* paragraph two of the syllabus; *State v. Owens* (1975), 51 Ohio App.2d 132, 5 O.O.3d 290, 366 N.E.2d 1367, paragraph two of the syllabus (1975).

{¶17} In the instant case, Appellant did not renew his motion for relief from prejudicial joinder. Nonetheless, if it appears a defendant is prejudiced by joinder, a trial court may grant a severance. *State v. Brinkley* 105 Ohio St.3d 231, 824 N.E.2d 959, 2005–Ohio–1507. The defendant bears the burden of proving the trial court abused its discretion in denying severance. *Id*.

{¶18} To prevail on a claim to sever counts, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), *citing State v. Hamblin*, 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476 (1988) and *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

{¶19} A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in

separate trials, and, if not, (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. *Id.*

**{¶20}** In the instant case, the focus at the hearing was on joinder of defendants rather than joinder of offenses. Thus, Appellant did not provide the trial court with sufficient information to weigh the considerations favoring joinder of offenses against the potential prejudice of his right to a fair trial.

**{¶21}** Further, we find the evidence of each count is simple and distinct. The indictments involved two incidents which occurred on two separate dates. The witnesses and victims were different as to the two events which resulted in the charges. The trial court clearly laid out each separate offense as set forth in the indictment in the jury instructions. Tr. 3617-3654. Further, the court instructed the jury each of the offenses constituted a separate and distinct matter, and the jury must consider each charge separately, uninfluenced by their verdict as to the other charges. Tr. 3659.

**{¶22}** We find Appellant has not demonstrated prejudice from joinder of offenses. The first assignment of error is overruled.

II.

**{¶23}** Appellant argues the court erred in joining his indictments with those of Marcelluis Luckie for trial.

**{¶24}** Crim.R. 8(B) governs joinder of defendants and states:

Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting

an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

{¶25} In order to obtain a severance, a defendant must demonstrate prejudice by the joinder. Crim R. 14 provides, in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶26} The decision to grant severance rests in a trial court's sound discretion. *State v. Torres,* 66 Ohio St.2d 340 (1981). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶27} The law favors the joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of

multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries. *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401 (1980).

**{¶28}** The United States Supreme Court has stated, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Even where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* "A request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987).

**{¶29}** As discussed in the first assignment of error, the evidence was simple and distinct, and with the exception of the weapons under disability charge against Luckie, the defendants were charged with the same crimes arising out of the same two home invasions. While Appellant argues the evidence was indirect and inferential rather than direct, the case law requires the evidence to be *distinct*, not direct. *Schaim, supra.* Further, the trial court instructed the jury:

> Separately consider the evidence that applies to each Defendant as though he were being tried separately. State your finding to each Defendant uninfluenced by your verdict as to the other Defendant.
> Tr. 3659-60.

{¶30} We find no abuse of discretion in the trial court's joinder of Appellant and his co-defendant Luckie.

{¶31} The second assignment of error is overruled.

III.

{¶32} In his third assignment of error, Appellant argues the court erred in failing to grant a mistrial after Jason O'Neal testified to statements made by Luckie which implicated Appellant, in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

{¶33} A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened.    *State v. Reynolds,* 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497 (1988). The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin,* 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9 (1991). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794 (1992).

{¶34} In *Bruton, supra,* a postal inspector testified about a confession one co-defendant, Evans, had made to the inspector. Evans confessed he and the other co-defendant, Bruton, had committed armed robbery. Neither Evans nor Bruton testified at trial. The court admitted the evidence, but instructed the jury they could not use evidence from Evan's confession against Bruton. The United States Supreme Court reversed, and

ruled a substantial risk existed that the jury improperly relied on incriminating, extra judicial statements in determining the defendant's guilt. 391 U.S. at 126. The defendants should have been tried separately, in which case the postal inspector's testimony would not have been placed in front of the jury which determined Bruton's guilt. *Id.* The basis of the *Bruton* decision was Bruton's inability to confront and cross-examine Evans about his statements concerning Bruton's involvement. Although the evidence regarding Evan's confession was admissible against Evans as an admission of a party opponent, it was not admissible against Bruton, as Bruton was effectively prevented from confronting witnesses against him. *Id.* at 127-128.

{¶35} The Ohio Supreme Court found *Bruton* applicable even when the statement does not clearly implicate the co-defendant:

(T)he Bruton rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. The fact that the incrimination amounts to a link in a chain of circumstances rather than a direct accusation cannot dispose of the applicability of the Bruton rule. Just as one can be convicted on circumstantial evidence, one can be circumstantially accused. *Fox v. State* (Ind.App.1979), 384 N.E.2d 1159, 1170.

*State v. Moritz*, 63 Ohio St.2d 150, 155, 407 N.E.2d 1268, 1272 (1980).

**{¶36}** Appellant argues the following testimony by Jason O'Neal violates the *Bruton* rule, "He [Luckie] jumped out the car. I looked at Uvon in shock. Like, he got out. He hugged her. He says, 'Sorry about what happened. We going to find out who did this. And sorry about your dog.'" Tr. 762.

**{¶37}** The legal underpinning of *Bruton* is the inability to confront and cross-examine a *non-testifying* co-defendant. In the instant case, Marcelluis Luckie testified. Tr. 3449 et seq. Therefore, there is no *Bruton* violation in the admission of this testimony as to Appellant.

**{¶38}** The third assignment of error is overruled.

IV.

**{¶39}** In his fourth assignment of error, Appellant argues the court erred in allowing eleven of the State's witnesses to identify him in court, as a first-time identification in court is inherently suggestive and unreliable.

**{¶40}** In *State v. Vargas,* 5th Dist. Stark No. 2001CA00044, 2002-Ohio-2478, the appellant argued the trial court erred in admitting an in court identification because police did not previously conduct a line-up or a photo array, the description the witness gave to the police was vague, and the in court identification would be inherently suggestive and unreliable. In determining the reliability of the identification, we found the test to be applied is whether, under the totality of the circumstances, the identification is reliable even though the confrontation procedure was suggestive. *Id., citing State v. Parker*, 53 Ohio St.3d 82, 87, 558 N.E.2d 1164 (1990). In making this determination, the court must consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the degree of attention of the witness, (3) the accuracy of the witness' prior description

of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time elapsed between the crime and the identification. *Id., citing Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

**{¶41}** Appellant does not argue any of the in court identifications were unreliable under the test set forth in *Neil v. Biggers, supra,* nor does he cite to the transcript pages in which the complained-of identifications are set forth as required by App. R. 16(A)(7). Rather, he argues we should adopt the position of the Connecticut Supreme Court in *State v. Dickson,* 322 Conn. 410, 141 A.3d 810 (2016). In that case, the Connecticut court held in cases in which identity is an issue, in court identifications which are not preceded by a successful identification in a nonsuggestive identification procedure implicate due process principles and, therefore, must be prescreened by the trial court. *Id.* We decline to adopt such a procedure as a case of first impression in Ohio.

**{¶42}** The fourth assignment of error is overruled.

V.

**{¶43}** In his fifth assignment of error, Appellant argues the court erred in overruling his motion to suppress. He argues the search warrants issued for the black Pontiac were invalid because Detective Todd Vanausdle did not have personal knowledge of the points he put in the affidavit for the warrants, but instead received the information from Detective Rich Miller.

**{¶44}** Appellant has cited no authority to support his proposition the affiant for a search warrant must have direct personal knowledge of every fact contained in an affidavit submitted to the court to obtain a search warrant. *See State v. Jefferson,* 5th Dist. Richland No. 09-CA-20, 2009-Ohio-5485, ¶45. "Observations of fellow officers of the

Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *State v. Henderson*, 51 Ohio St.3d 54, 57, 554 N.E.2d 104, 107 (1990), *quoting United States v. Ventresca* (1965), 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965). Hearsay information may be relied on by the officer in providing an affidavit for a search warrant if in fact the officer reasonably believes the information to be true. *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667-678 (1978). While it is desirable to have the affiant provide as much detail as possible from his or her own knowledge, practical considerations will often require the affiant to rely on information provided by other sources. *State v. Taylor*, 82 Ohio App.3d 434, 442, 612 N.E.2d 728, 732–33 (2nd Dist. Montgomery, 1992). Since the purpose of the affidavit is not to prove guilt, but only to establish probable cause to search, the affiant may rely on hearsay information. *Franks*, 438 U.S. at 167, 98 S.Ct. at 2682, 57 L.Ed.2d at 679.

**{¶45}** In the instant case, Detectives Miller and Vanausdle were part of a detective team working on the investigation. Supp. Tr. 103. Det. Vanausdle knew Det. Miller for his entire career in law enforcement of more than 20 years, and knew him to be trustworthy. Supp. Tr. 101-103. We find the court did not err in finding the affidavit which was supported by the collective knowledge of the officers involved in a common investigation was sufficient to support a search warrant even though the detective who signed the warrant did not have personal knowledge of every fact contained therein.

**{¶46}** The fifth assignment of error is overruled.

VI.

**{¶47}** In his sixth assignment of error, Appellant argues the court erred in refusing to give the jury his requested instruction on eyewitness testimony:

(A) Some things you may consider in weighing the testimony of an identifying witness are:

(1) the capacity of the witness, that is, the (describe age of witness) age, (describe level of intelligence of witness) intelligence, (describe defective senses of witness, if any), and the opportunity of the witness to observe;

(2) the witness' degree of attention at the time the witness observed the offender;

(3) the accuracy of the witness' prior description (or identification, if any);

(4) whether the witness had had occasion to observe the defendant in the past;

(5) the interval of time between the event and the identification; and

(6) all surrounding circumstances under which the witness has identified the defendant (including deficiencies, if any, in lineup, photo display, or one-on-one identification).

(B) If, after examining the testimony of the identifying witness you are not convinced beyond a reasonable doubt the defendant is the offender, you must find the defendant not guilty.

O.J.I. CR 409.05(5).

**{¶48}** The official comment to this instruction states:

> The court should give this charge on identification only if the charge, or parts thereof, are specifically applicable to the facts at issue. *State v. Guster*, 66 Ohio St.2d 266 (1981), which held under the facts in that case that it was not error to refuse an instruction directing the jury's attention to the potential unreliability of eyewitness testimony, states that "[t]he matter should rest in sound discretion of the trial Court." The "Telfaire Charge" is given in *United States v. Telfaire*, 469 F.2d 552 (C.A.D.C. 1972). For circumstances in which a Telfaire-type instruction would be warranted, see *State v. Dale*, 3 Ohio App.3d 431 (1982).

**{¶49}** In a criminal case, if requested special instructions are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge. *Cincinnati v. Epperson*, 20 Ohio St.2d 59, 253 N.E.2d 785 (1969), paragraph one of the syllabus. However, a court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings. *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157, 160 (1981). Abstract rules of law or general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue. *Id.*

**{¶50}** The decision of whether to give a *Telfaire* instruction is a matter within the sound discretion of the trial court and depends "in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction." *Id.* The Ohio Supreme Court has held:

A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions.

*Id.* at syllabus.

**{¶51}** The court instructed the jury on the credibility of witnesses as follows:

You, as jurors, are the sole judges of the facts and the credibility of the evidence. In weighing the evidence you must consider the credibility of the witnesses. Use the tests of truthfulness that you are accustomed to using in your daily lives.

These tests include the appearance of each witness on the stand; the witness's manner of testifying; the reasonableness of that testimony; the opportunity the witness had to see, hear, and know the things concerning

which he or she testified; the witness's accuracy of memory; frankness or lack of it; intelligence; interest; and bias, if any, together with all the facts and circumstances surrounding the testimony.  Use these tests to give each witness's testimony such weight as you think proper.

Tr. 3613.

**{¶52}** Appellant makes no argument specific to the reliability of the identification evidence in the instant case in support of his claim of error, other than the witnesses relied upon by the State were "an assorted mix of drug users, criminals, and otherwise unscrupulous people."  Brief of Appellant, page 16.  The general credibility instruction given by the court adequately addresses these concerns regarding the witnesses' testimony and their identification of Appellant.  We find the court did not abuse its discretion in denying the requested instruction, as specific concerns related to the identification testimony addressed by the *Telfaire* instruction were not raised in the instant case.

**{¶53}** The sixth assignment of error is overruled.

**{¶54}** The judgment of the Richland County Common Pleas Court is affirmed.


By: Hoffman, J.

Wise, John, P.J.  and

Gwin, J. concur