[Cite as *State v. Curley*, 2024-Ohio-1031.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 30510 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICHARD CURLEY | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 21 10 36787 |

DECISION AND JOURNAL ENTRY

Dated: March 20, 2024

FLAGG LANZINGER, Judge.

**{¶1}** Defendant-Appellant Richard Curley appeals from his convictions for multiple counts of burglary and attempted burglary in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** On October 19, 2021, a grand jury indicted Curley on one count of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2). He was also charged with seven counts of attempted burglary, felonies of the third degree, in violation of R.C. 2911.12(A)(2)/R.C. 2923.02. On June 22, 2022, the State filed a supplemental indictment charging Curley with an additional two counts of burglary and an additional seven counts of attempted burglary. Prior to trial, the State dismissed multiple counts and amended the indictment to renumber the remaining three counts of burglary and seven counts of attempted burglary. Curley pleaded not guilty.

Throughout the proceedings and trial Curley represented himself with assistance from court-appointed standby counsel.

{¶3} Curley moved to suppress evidence obtained from his vehicle. After a hearing, the trial court denied Curley's motion to suppress.

{¶4} The matter proceeded to a jury trial. The State called twenty witnesses to testify. Additionally, many exhibits were admitted as evidence at trial, including security camera videos, body camera videos, recordings of 911 calls, and photographs. Curley chose not to testify or call any witnesses.

{¶5} After hearing the evidence, the jury found Curley guilty of three counts of burglary and four counts of attempted burglary. Curley now appeals raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN DENYING MR. CURLEY'S MOTION TO SUPPRESS THE EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT THAT WAS ISSUED AND EXECUTED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

{¶6} In his first assignment of error, Curley argues that the trial court erred when it denied his motion to suppress evidence because the judge executed a search warrant in violation of his constitutional rights. Curley presents two arguments. First, Curley argues the affidavit supporting the search warrant did not sufficiently identify the items to be searched and seized from the car. Second, Curley asserts that there was no probable cause for police to obtain a search warrant of Curley's car, asserting that the supporting affidavit failed to show a sufficient nexus between the vehicle and the burglary investigation. We disagree.

{¶7} As a preliminary matter, "[a]rguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, N.A. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. In his motion to suppress, Curley quoted the law and asserted his rights were violated. However, "a motion to suppress evidence * * * must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St. 3d 54 (1994), syllabus. Other than quoting relevant caselaw and asserting his rights were violated, Curley did not challenge the particularity of the warrant's description of the items sought. Curley did not state the legal and factual bases with sufficient particularity to place the prosecutor and court on notice. Additionally, the issue was not raised with sufficient particularity by Curley at his suppression hearing. Curley raises this argument for the first time on appeal. Accordingly, this Court will not consider Curley's first argument regarding particularity.

{¶8} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo

review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶9} A search warrant may only be issued "'upon probable cause,' meaning only when the affidavit supporting the warrant establishes a 'fair probability that contraband or evidence of a crime will be found in a particular place * * *.'" *State v. Schubert*, 171 Ohio St.3d 617, 2022-Ohio-4604, ¶ 11, quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). On appeal, the duty of this Court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Schubert* at ¶ 11. "[E]ven though the existence of probable cause is a legal question[,] * * * a warrant should be upheld when the issuing judicial officer had a substantial basis for believing that probable cause existed, regardless of what the reviewing court's independent determination regarding probable cause might be." *Id.* "[T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus.

{¶10} Curley asserts that the affidavit that Detective Kelley submitted in support of the search warrant lacked probable cause. Curley asserts that there were no facts within the affidavit to suggest that Curley's car "was in any way used in the commission of the alleged offenses." Curley further asserts that his car was parked legally and was only located because police looked for a car registered in his name. In the affidavit supporting the search warrant, Detective Kelley averred that: (1) he had been employed by the Akron Police Department for 24 years, (2) he was investigating a burglary that occurred on October 5, 2021, on Ecton Road, (3) within the previous month, Detective Kelley was investigating other "burglaries in the same area with property * * * taken during the incidents" and that "various sources of security footage depict[ed Curley]

attempting to break into homes in the same area[,]" (4) on October 5, 2021, "Ring Doorbell Camera footage" showed Curley entering a residence's "enclosed porch and peering through the windows[,]" (5) multiple witnesses reported observing Curley "casing" the neighborhood, (6) Curley was arrested after residents around Ecton Road chased and cornered Curley, (7) Akron Police had located an abandoned vehicle registered to Curley in the Ecton Road area, approximately one-half mile from the location of Curley's arrest, (8) Curley's vehicle was secured and towed for processing, and (9) Curley had "a substantial criminal history and was recently released from prison for burglary and related offenses."

**{¶11}** Upon review of the detective's affidavit, we conclude that it provided the magistrate or judge with a substantial basis for concluding that probable cause existed. *See Schubert* at ¶ 11. The detective's statements within the affidavit created a fair probability that contraband or evidence of a crime would be found within the car. We, therefore, conclude that the trial court did not err when it denied Curley's motion to suppress. Curley's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**MR. CURLEY'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE POSSESSION IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.**

**{¶12}** Curley argues that his convictions for burglary and attempted burglary are against the manifest weight of the evidence. We disagree.

**{¶13}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶14} Initially, we note that in Curley's arguments he asserts several times that the State did not set forth evidence to support certain elements of his convictions. He contends both that the trier of fact lost its way and that the State failed to prove all elements of the crimes charged beyond a reasonable doubt. The latter argument, however, sounds in sufficiency rather than weight. *See State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25 ("Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury."). Because Curley's stated assignment of error presents this Court with strictly a weight challenge and because that is the only standard of review that he sets forth in his brief, we limit our review to that issue. *See State v. Poland*, 9th Dist. Medina No. 14CA0003-M, 2014-Ohio-5737, ¶ 24. *See also State v. Kepich*, 9th Dist. Summit No. 27520, 2015-Ohio-1920, fn.1.

{¶15} An individual who violates R.C. 2911.12(A)(2) is guilty of burglary. R.C. 2911.12(D). R.C. 2911.12(A)(2) states that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * *." "'Force' means any violence, compulsion, or

constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶16} Attempt is defined by R.C. 2923.02(A), which provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Thus, "[a] criminal attempt occurs when the offender commits an act that constitutes a substantial step toward the commission of an offense." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 26. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

## Count One – Ecton Road Burglary

{¶17} Count one of the indictment alleged that Curley committed burglary on October 5, 2021, at a residence located on Ecton Road. Curley argues that the jury's determination that he gained access to that residence by force, stealth, or deception was against the manifest weight of the evidence. Additionally, Curley argues that the jury's determination was against the manifest weight of the evidence because no items were stolen from the residence.

{¶18} At trial, L.W. testified that he lives at his residence on Ecton Road in Akron. L.W. testified that he has a motion activated Ring Doorbell on his front and back doors. L.W. testified that on October 5, 2021, at 3:28 a.m. he received an alert from Ring that someone was inside his attached "[e]ntirely enclosed" back porch. After receiving the alert, L.W. "jumped out of bed, grabbed [his] phone, [and] ran down the steps" from the second floor. Once on the ground floor, L.W. testified that he saw an individual "leaving the back" of his enclosed porch. L.W. called 911.

The recording of the 911 call was played during trial, in which L.W. explains that "the prowler" left his house through the backdoor of his porch as he came downstairs, but he captured a video of him. L.W. testified that the man fled the scene, going around his house towards the front, and then further down the road. L.W. provided Akron Police with one video, which was admitted as evidence during trial. The footage from the camera, which is located inside his enclosed porch, shows a man, who was later identified as Curley, walking inside the porch and looking into the home.

{¶19} Officer Culver testified that he was L.W.'s neighbor and an off-duty police officer. Officer Culver also lived on Ecton Road. Officer Culver was alerted by his Blink Camera that someone was in his front yard and near his front door. He walked outside looking for the person but did not see anything. He walked around looking for someone when he heard a "siren going off at [his] neighbor's house." He began to pursue the man, who fled from the neighbor's yard when the sirens activated.

{¶20} K.H. testified that he lives at a third residence on Ecton Road. K.H. testified that he had a Ring security camera alarm system. The Ring security system woke him with an alert indicating someone was in his driveway. When he viewed the video feed on his phone, he saw a man in his driveway. K.H. went downstairs and looked out the window. He saw his neighbor, Officer Culver, walking in the road "definitely in pursuit" of someone. K.H. testified that he knew someone was in his driveway, so he decided to open his door. Opening his door tripped K.H.'s alarm and activated the exterior lights of his house and a siren. Officer Culver and K.H. both testified that with the lights and siren activated, the man fled across the street, and was pursued by Officer Culver. K.H. grabbed a taser and exited his house to assist Officer Culver in attempting to apprehend the man. K.H. followed the man and Officer Culver until he found them wrestling on

the ground. K.H. used the taser on the man, who then surrendered until the authorities arrived. The police identified the man to be Curley. L.W. identified Curley as the man who L.W. witnessed leaving his enclosed porch.

{¶21} The jury's determination that Curley entered the residence on Ecton Road by force, stealth, or deception is not against the manifest weight of the evidence. The evidence at trial established that Curley was inside the attached enclosed porch at L.W.'s house, which is accessed by means of a door. We cannot conclude that the jury lost its way by choosing to believe Curley used force to open the door. *See Snyder* at ¶ 19; R.C. 2901.01(A)(1).

{¶22} Curley's argument that the jury's verdict is against the manifest weight of the evidence because nothing was stolen from the Ecton Road residence lacks merit. Contrary to Curley's argument, R.C. 2911.12(A)(2) does not require an offender to steal anything. R.C. 2911.12(A)(2) only mandates that an offender trespass in an occupied structure "with purpose to commit in the habitation any criminal offense * * *." Other courts have held that, "[w]here a person forces entry into a structure, it is reasonable to infer that he did so with the intent to commit a theft offense, in the absence of circumstances giving rise to a different inference." *State v. New*, 10th Dist. Franklin No. 05AP-930, 2006-Ohio-2965, ¶ 15. *See also State v. Levingston*, 106 Ohio App. 3d 433, 437 (2d Dist.1995). The jury could reasonably infer that Curley had used force to enter the enclosed porch and that he had entered with the intention to commit a theft. Having reviewed the record, this Court concludes that this is not the exceptional case in which the evidence weighs heavily against Curley's conviction on count one. *Otten*, 33 Ohio App.3d at 340.

**Count Nine – Portage Drive Burglary**

{¶23} Count nine of the indictment alleged that Curley committed burglary at a Portage Drive residence. Curley argues that the jury's determination that he gained access to the Portage

Drive residence by force, stealth, or deception was against the manifest weight of the evidence. Additionally, Curley argues that the jury's verdict was against the manifest weight of the evidence because the jury could infer someone else may have committed the burglary.

{¶24} During the trial, the State called M.S. Sr. who testified that he lives on Portage Drive in Akron. M.S. Sr. testified that he owns an ADT security system which is activated "when you open the doors" to the house while the alarm is armed. He further testified that on September 29, 2021, between 3:00 a.m., and 5:00 a.m., his security alarm went off while he was sleeping. After waking, M.S. Sr. went downstairs to discover a window and his back door open. M.S. Sr. testified that after securing his house, he called the police. After the police arrived, M.S. Sr. and the police noticed that a screen had been lifted on a second window, though the window was locked and not opened.

{¶25} M.S. Jr. also testified that he lives at the same residence on Portage Drive. M.S. Jr. testified that after his father had called the police, he noticed that his black Motorola cellphone was missing. The cellphone had a crack in it. Using an online tracker, M.S. Sr. was able to track the missing phone to a local pawn shop.

{¶26} The State also called Akron Police Detective Kelley who testified that in September of 2021, he was assigned to investigate multiple burglaries in the Highland Square area. Detective Kelley testified that he visited National Jewelry and Pawn as part of his investigation. Detective Kelley spoke with the shop's manager, S.T. The State called S.T. who testified that he is the manager of National Jewelry and Pawn. S.T. testified that on September 29, 2021, Curley attempted to pawn a cellphone, but it was cracked. S.T. testified that he could identify Curley as the individual who attempted to pawn the cracked cellphone because he had a copy of Curley's

driver's license. Detective Rhodaback testified that M.S. Jr.'s phone was found while executing the search within Curley's car.

{¶27} The jury's determination that Curley entered the residence on Portage Drive by force, stealth, or deception was not against the manifest weight of the evidence. M.S. Sr. testified that the residence was secured by a security system. That security system alarm went off in the early morning of September 29, 2021. M.S. Sr. testified that he discovered a door and window opened. Another window's screen had been moved. M.S. Jr. testified that his cellphone was missing from the ground floor. "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). We cannot conclude that the jury lost its way by choosing to believe Curley attempted to open the first window, successfully opened the second window, and then opened the door. *See Snyder*, 2011-Ohio-175, at ¶ 19.

{¶28} Curley's argument that the jury's verdict is against the manifest weight of the evidence because the jury could infer someone else may have committed the burglary lacks merit. The State presented evidence that Curley attempted to pawn a cracked cellphone at National Jewelry and Pawn hours after the burglary on Portage Drive. Police officers found M.S. Jr.'s cracked cellphone in Curley's vehicle. While Curley admits the evidence at trial demonstrates that Curley possessed M.S. Jr.'s cellphone, he alleges it fails to establish that he stole the cracked cellphone. We cannot conclude that the jury lost its way by choosing to infer that Curley's possession of the phone indicated that he had committed the burglary. *See State v. Smith*, 6th Dist. Lucas Nos. L-16-1113, L-16-1114, L-16-1115, 2017-Ohio-5762, ¶ 57. Having reviewed the record, this Court concludes that this is not the exceptional case in which the evidence weighs

heavily against Curley's conviction on count nine. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**Count Ten –Barwell Street Burglary**

{¶29} Count ten of the indictment alleged that Curley committed burglary at a residence located on Barwell Street. Curley argues that the jury's determination on count ten that he gained access to the Barwell Street residence by force, stealth, or deception was against the manifest weight of the evidence. Additionally, Curley argues that the jury's verdict was against the manifest weight of the evidence because the jury could infer someone else may have committed the burglary.

{¶30} At trial, E.P. testified that he lives on Barwell Street. He testified that he purchased a gold watch and a gold chain and retained the receipts for those purchases. He further testified that he stored those items on a table in the entry to his kitchen, "about eight feet" inside his side door. E.P. testified that the watch and necklace were reported stolen in September 2021. E.P. testified that he knew Curley because they worked together at Mustard Seed Café. Though he was familiar with Curley, E.P. had never invited Curley to his home, nor did he give his gold watch and gold chain to Curley.

{¶31} S.T., the manager of National Jewelry and Pawn, testified that on September 29, 2021, Curley pawned E.P.'s gold watch for $40. Detective Kelley testified that E.P.'s gold chain was found in Curley's possession at the time of his arrest.

{¶32} As with Count 9, the jury's determination that Curley entered the residence on Barwell Street by force, stealth, or deception is not against the manifest weight of the evidence. Curley pawned E.P.'s gold watch and was in possession of E.P.'s gold chain at the time of his arrest. We cannot conclude that the jury lost its way by choosing to infer that Curley's possession

of the E.P.'s gold watch and E.P.'s gold chain indicated that he had committed the burglary. *See Smith*, 2017-Ohio-5762, at ¶ 57. The jury could reasonably infer that Curley gained access via the closed side door and stole E.P.'s items.

{¶33} Curley's argument that the jury's verdict is against the manifest weight of the evidence because the jury could infer someone else may have committed the burglary also lacks merit. "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. "Although the State was unable to produce any physical evidence or eyewitness testimony definitively placing [Curley] at [the residence on Barwell Street], the State set forth a wealth of circumstantial evidence implicating [Curley]." *State v. Garcia*, 9th Dist. Summit Nos. 27810, 27811, 2016-Ohio-4667, ¶ 41. E.P. testified that he stored his gold watch and gold chain in his kitchen. The items were reported stolen from his residence. Curley was in possession of E.P.'s gold necklace when he was arrested. Curley pawned E.P.'s watch. Having thoroughly reviewed the record, we cannot conclude that the jury lost its way when it convicted Curley on count ten for burglary. *See Otten*, 33 Ohio App.3d at 340.

**Count Four – Kathleen Street Attempted Burglary**

{¶34} Count four of the indictment alleged that Curley committed attempted burglary on September 20, 2021, at a residence located on Kathleen Street. Curley argues that his conviction for attempted burglary on Count 4 is against the manifest weight of the evidence because (1) nothing was stolen from the residence on Kathleen Street, and (2) Curley never gained access to the residence on Kathleen Street.

{¶35} At trial, J.G. testified that she lives on Kathleen Street in Akron. J.G. testified that she has a motion-activated Blink camera system. She testified that on September 20, 2021, she

received an alert of "[s]omeone walking up on the porch at 4:30 in the morning, realizing that the camera clicked on, and then trying to hide." The Blink camera video was admitted at trial and shows a man, later identified as Curley, walking up to the front door of the house, seeing the camera, and then ducking out of view. J.G. additionally testified that a screen had been pulled away from her window, stating she "realized there was a screen that * * * someone had obviously started to try to move * * *." A photograph of the damaged screen was admitted as evidence.

{¶36} Curley's arguments that the jury's verdict is against the manifest weight of the evidence on count four because he never stole property from the residence on Kathleen Street or gained access to Kathleen Street lack merit. To prove attempted burglary, the State need not show that the defendant was successful in entering the property or stealing anything. *See State v. Daylong*, 10th Dist. Franklin No. 19AP-279, 2021-Ohio-4192, ¶ 39 (10th Dist.); *State v. Dillard*, 10th Dist. Franklin Nos. 18AP-178, 18AP-179, 2018-Ohio-4842, ¶ 25; *State v. Clelland*, 83 Ohio App.3d 474, 488 (4th Dist.1994). "A criminal attempt occurs when the offender commits an act that constitutes a substantial step toward the commission of an offense." *Carson*, 2013-Ohio-5785, at ¶ 26. The Blink camera footage shows Curley ducking out of sight. J.G. testified that her window's screen was damaged as though someone had attempted to enter her home. We cannot conclude that the jury lost its way by choosing to infer that Curley was responsible for damaging the screen when the Blink camera footage showed Curley present at the residence. This Court has previously held that evidence that a residence has signs of forced entry shows an attempt to enter the residence by force. *See State v. Golston*, 9th Dist. Summit No. 22154, 2005-Ohio-8, ¶ 18. After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Curley guilty on count four of attempted burglary. *See Otten*, 33 Ohio App.3d at 340.

**Count Five – Casterton Road Attempted Burglary**

**{¶37}** Count five of the indictment alleged that Curley committed attempted burglary on September 20, 2021, at a residence located on Casterton Road. Curley argues that his conviction for attempted burglary on count five is against the manifest weight of the evidence because (1) nothing was stolen from the residence on Casterton Road, and (2) Curley never gained access to the residence on Casterton Road.

**{¶38}** At trial, B.K. testified that she lives on Casterton Road in Akron. B.K. testified that she owns a Ring camera system that is motion activated and sends alerts to her cellphone. She testified that she received an alert of an unidentified person in her yard and at her backdoor at 3:14 a.m. on September 23, 2021. She provided two videos to Akron Police, which were viewed during the trial. The videos show Curley approaching the backdoor of the residence via the driveway, entering the enclosure which surrounded the backdoor, and then leaving that enclosure to exit around towards the other side of the house.

**{¶39}** Curley's arguments that the jury's verdict is against the manifest weight of the evidence on count five because he never stole property from the residence on Casterton Road or gained access to Casterton Road lack merit. To prove attempted burglary, the State need not show that the defendant was successful in entering the property or stealing anything. *See Daylong*, 2021-Ohio-4192, at ¶ 39; *Dillard*, 2018-Ohio-4842, at ¶ 25; *Clelland*, 83 Ohio App.3d at 486. "A criminal attempt occurs when the offender commits an act that constitutes a substantial step toward the commission of an offense." *Carson*, 2013-Ohio-5785, at ¶ 26. The video camera shows Curley approaching the backdoor of the residence and entering the enclosure which surrounded the backdoor. Ohio courts have held that evidence establishing an offender's attempt to enter a stranger's residence at night, without explanation, raises an inference that the offender intended to

commit a theft offense in the residence. *E.g.*, *State v. Burgett*, 3d Dist. Marion No. 9-10-37, 2010-Ohio-5945, ¶ 25. After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Curley guilty of attempted burglary. *See Otten*, 33 Ohio App.3d at 340.

**Count Seven & Count Eight – Kenilworth Drive Attempted Burglaries**

**{¶40}**  Counts seven and eight of the indictment alleged that Curley committed attempted burglaries on October 3, 2021, at two residences located on Kenilworth Drive. Curley argues that his convictions for attempted burglary on counts seven and eight are against the manifest weight of the evidence because (1) nothing was stolen from either residence on Kenilworth Drive, and (2) Curley never gained access to either residence on Kenilworth Road.

**{¶41}**  At trial, C.F. testified that he lives at a residence on Kenilworth Drive in Akron. C.F. testified that he owns a Blink Camera that sends alerts to his cellphone. C.F. testified that the Blink Camera sent him an alert on October 3, 2021, at 5:30 a.m. After waking, C.F. viewed the video recording sent from his Blink Camera. C.F. testified that he went downstairs and looked out his front door. Across the street he saw the same man in the video, "attempting to break into the front door of my neighbor across the street." C.F. further testified that he watched the man leave his neighbor's porch, get into a dark colored Volkswagen, and drive away. At this point C.F. called 911. C.F. further testified that he did not know what happened between the time when he received the Blink Camera Alert and when he walked downstairs to see someone on his neighbor's porch. C.F. provided Akron Police with one video, which was viewed during the trial. The Blink camera video shows a man approaching the front door of C.F.'s residence on Kenilworth Drive, look up and down the street, reach towards the doorknob, attempt to enter, and then turn away from the door when it does not open. C.F. is the general manager at Mustard Seed Café and knows Curley

because he previously employed Curley as a line cook. C.F. identified Curley as the individual in the video.

{¶42} M.G. testified that she lives at another residence on Kenilworth Drive in Akron. M.G. testified that she does not have a security camera system. M.G. testified that when she woke around 9:00 a.m. on October 3, 2021, and received a text sent earlier in the morning from C.F. M.G. testified that she inspected her house and found that the doorknob to her side door had "obviously been yanked on" so that she had to "rescrew in the doorknob[] so that it was tight."

{¶43} Curley's arguments that the jury's verdict is against the manifest weight of the evidence on counts seven and eight because he never stole from either Kenilworth Drive residence lacks merit. To prove attempted burglary, the State need not show that the defendant successfully stole anything. *See Daylong*, 2021-Ohio-4192, at ¶ 39. The video camera at C.F.'s residence on Kenilworth Drive clearly shows Curley approaching the front door of the house, looking up and down the street, attempting to open the door, and then leaving when the door does not open. C.F. testified that he saw the same man in the Blink Camera video, "attempting to break into the front door of my neighbor across the street." M.G. testified that her doorknob had been damaged. With regard to count seven at C.F.'s residence on Kenilworth Drive, an offender's attempt to enter a stranger's residence at night, without explanation, raises an inference that the offender intended to commit a theft offense in the residence. *E.g.*, *Burgett*, 2010-Ohio-5945, at ¶ 25. With regard to count eight at M.G.'s residence on Kenilworth Drive, this Court has previously held that evidence that a residence has signs of forced entry or evidence that a doorknob was rattled shows an attempt to enter the residence by force. *Golston*, 2005-Ohio-8, at ¶ 18. After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Curley guilty of attempted burglary. *See Otten*, 33 Ohio App.3d at 340.

{¶44} Curley's arguments that the jury's verdict is against the manifest weight of the evidence on counts seven and eight because he never gained access to either residence on Kenilworth Drive also lacks merit. To prove attempted burglary, the State need not show that the defendant was successful in entering the property. *See Daylong*, 2021-Ohio-4192, at ¶ 39. The video camera at C.F.'s residence on Kenilworth Drive shows Curley approaching the front door of the house, looking up and down the street, attempting to open the door, and then leaving when the door does not open. C.F. testified that he saw the Curley, "attempting to break into the front door of my neighbor across the street." Other courts have held that evidence establishing an offender's attempt to enter a stranger's residence at night, without explanation, raises an inference that the offender intended to commit a theft offense in the residence. *E.g.*, *Burgett*, 2010-Ohio-5945, at ¶ 25. Though Curley was not able to gain access to the two residences, the jury could reasonably infer that if he had been able to gain access to either residence, he would have entered. After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Curley guilty of attempted burglary. *See Otten*, 33 Ohio App.3d at 340. We find that Curley's convictions for attempted burglary on counts seven and eight were not against the manifest weight of the evidence.

**Other Arguments**

{¶45} In setting forth his claim that his convictions are against the manifest weight of the evidence, Curley makes other arguments relating to ineffective assistance of counsel and plain error. His captioned assignment of error only pertains to the manifest weight of the evidence. This Court has held that "[a]n appellant's captioned assignment of error 'provides this Court with a roadmap on appeal and directs this Court's analysis.'" *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 41, quoting *State v. Marzolf*, 9th Dist. Summit No. 24459, 2009-

Ohio-3001, ¶ 16. This Court will not address arguments that fall outside the scope of an appellant's captioned assignment of error. *See Pleban* at ¶ 41. Curley's other arguments are outside the scope of his stated assignment of error, and we decline to address them. App.R. 16(A)(7). Curley's second assignment of error is overruled.

### III.

{**¶46**} Curley's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
<u>CONCUR.</u>


<u>APPEARANCES</u>:

JAMES K. REED, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.