[Cite as *State v. Byrd*, 2025-Ohio-1045.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.   31197 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER BYRD | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.   CR 23 10 3295 |

DECISION AND JOURNAL ENTRY

Dated: March 26, 2025

---

FLAGG LANZINGER, Judge.

{¶1}   Christopher Byrd appeals from the judgment of the Summit County Court of Common Pleas that denied his motion to suppress.  For the following reasons, this Court affirms.

I.

{¶2}   On September 25, 2023, Detective Harvey with the Akron Police Department applied for and obtained a search warrant for a residential property located at 630 East Catawba Avenue in Akron.  The search warrant related to suspected drug trafficking.  Relevant to this appeal, the search warrant permitted the search and seizure of:

> Controlled substances, such as methamphetamine and other drugs of abuse; Drug abuse instruments, paraphernalia, and any other items used in the manufacturing, preparation, distribution, sale or use of illicit substances; deadly weapons, such as firearms and ammunition; records, such as documents, receipts, ledgers or other instruments (including those stored electronically) relating to illicit drug transaction; mail and other documents showing an indicia of control over the property; currency, safes and other lockboxes; computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware); [and] Any other evidence of TRAFFICKING IN

CONTROLLED SUBSTANCES or POSSESSION OF CONTROLLED SUBSTANCES.

{¶3} In the "probable cause" section of his affidavit in support of the search warrant, Detective Harvey averred, as summarized below, that:

(1) he personally participated in the investigation of Byrd's distribution of controlled substances;

(2) he and other investigators received information that Byrd was supplying large amounts of crystal methamphetamine in the greater Akron area;

(3) on September 28, 2022, the Akron Police Department and MEDWAY Drug Enforcement Agency received information from a confidential informant ("C.I.") indicating that an individual named Quincey Byrd[1] was selling methamphetamine in the Akron area;

(4) MEDWAY investigators believed the C.I.'s information was reliable because "his information has been consistently corroborated by independent investigation, corroborated by other witnesses, and corroborated by other information derived through the course of the investigation[;]"

(5) to his knowledge, the C.I. never provided deliberately false or misleading information to MEDWAY investigators;

(6) on December 8, 2022, the C.I. conducted a controlled purchase of narcotics from Quincey Byrd in a parking lot wherein: (a) Quincey Byrd and the C.I. met in a parking lot; (b) Quincey Byrd told the C.I. that a white vehicle would be arriving with the methamphetamine; (c) a white vehicle registered to Byrd arrived to the parking lot; (d) the driver of the white vehicle matched the description of Byrd listed on the vehicle's registration; (e) Quincey Byrd met with the driver of the white vehicle; (f) after meeting with Quincey Byrd, the white vehicle left the parking lot; (g) Quincey Byrd then sold a substance that field-tested positive for methamphetamine to the C.I.; (h) the foregoing was observed by him (Detective Harvey), the Akron Police Department Narcotics Unit, and/or MEDWAY Drug Enforcement Agents;

(7) on September 18, 2023, he (Detective Harvey) received information from the Stark County FBI Safe Streets Task Force indicating that a "source of information" who had known Byrd for many years told them that: (a) Byrd sold crystal methamphetamine; (b) Byrd lives at 630 East Catawba Avenue in Akron; (c) Byrd had multiple pounds of methamphetamine at his house at any given time; (d) Byrd delivered methamphetamine to parking lots near his house; (e) he had purchased methamphetamine from Byrd as recently as one month ago; (f) Byrd's brother had recently been arrested for selling narcotics;

---

[1] Although it is inferred that Quincey Byrd is Byrd's brother, the record does not affirmatively indicate whether Byrd and Quincey Byrd are related. Their familial relation, or lack thereof, is of no consequence for purposes of this appeal.

(8) on September 19, 2023, the Akron Police Department Narcotics Unit assisted by the Akron Safe Streets Task Force executed a search warrant at a suspected drug dealer's house wherein the detectives discovered: (a) an empty box addressed to Byrd; and (b) text messages between the suspected drug dealer and Byrd from August 10, 2023, regarding the suspected sale of methamphetamine;

(9) the suspected drug dealer later stated that he purchased methamphetamine from Byrd and that Byrd lived at 630 East Catawba Avenue in Akron.

{¶4} Upon execution of the search warrant, Byrd was arrested and later charged with several drug-related offenses, including drug trafficking and possession. Byrd moved to suppress the evidence law enforcement seized during the search of 630 East Catawba Avenue. Byrd argued that the affidavit Detective Harvey submitted in support of the search warrant failed to set forth probable cause because it relied upon stale facts and unreliable information from confidential informants. Byrd also argued that the search warrant failed to satisfy the particularity requirement under the Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution because it authorized an overly broad search and seizure of "computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware)" with "no temporal boundary or subject matter limit . . . ."

{¶5} The State opposed Byrd's motion to suppress. The trial court held a hearing on Byrd's motion. Neither Byrd nor the State presented testimony at the hearing. Instead, the parties presented arguments solely on the "four corners" of the search warrant.

{¶6} After the hearing, the trial court issued a judgment entry that denied Byrd's motion to suppress. First, the trial court held that Detective Harvey's affidavit set forth sufficient probable cause because the affidavit's reliance upon information the C.I. provided was also supported by "personal observations and independent investigation." Second, the trial court determined that the affidavit did not rely upon stale facts because the events from 2022 were refreshed by the more

recent events from September 2023. Third, the trial court determined that the search warrant met the particularity requirement because it was "sufficiently specific."

{¶7} In determining that the search warrant met the particularity requirement, the trial court cited case law for the proposition that a search warrant that includes broad categories of items may nevertheless be valid if the description of the items is as specific as the circumstances and the nature of the activity under investigation permit. The trial court also cited case law for the proposition that a search warrant fails the particularity requirement if it gives the executing officers unlimited discretion in determining what items are subject to search and seizure.

{¶8} In determining that the search warrant was "sufficiency specific[,]" the trial court cited the language of the search warrant indicating which items were subject to search and seizure, including:

> Controlled substances, such as methamphetamine and other drugs of abuse; Drug abuse instruments, paraphernalia, and any other items used in the manufacturing, preparation, distribution, sale or use of illicit substances; deadly weapons, such as firearms and ammunition; records, such as documents, receipts, ledgers or other instruments (including those stored electronically) relating to illicit drug transaction; mail and other documents showing an indicia of control over the property; currency, safes and other lockboxes; computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware); [and] Any other evidence of TRAFFICKING IN CONTROLLED SUBSTANCES or POSSESSION OF CONTROLLED SUBSTANCES.

The trial court then explained that Detective Harvey averred that, in his experience, he had found records related to drug trafficking stored in electronic media of various kinds, including cell phones, jump drives, computers, and tablets. The trial court concluded that the search warrant was sufficiently specific because it indicated the circumstances and the nature of the activity under investigation and did not give the executing officers unlimited discretion to determine which items were subject to search and seizure.

{¶9} After the trial court denied his motion to suppress, Byrd pleaded no contest to the charged offenses. The trial court found Byrd guilty and sentenced him accordingly. Byrd now appeals the trial court's denial of his motion to suppress, raising one assignment of error for this Court's review.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶10} In his sole assignment of error, Byrd argues that the trial court erred by denying his motion to suppress. Byrd argues that Detective Harvey's affidavit failed to set forth probable cause because it relied upon hearsay statements, unreliable information from confidential informants, and stale facts. Byrd also argues that the search warrant failed to satisfy the particularity requirement because it authorized an overly broad search and seizure of "computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware)" with no temporal limitations. For the following reasons, this Court overrules Bryd's assignment of error.

**Standard of Review**

{¶11} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at

¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 2003-Ohio-829, ¶ 12 (9th Dist.).

### Fourth Amendment Protections

{¶12} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

{¶13} Article I, Section 14 of the Ohio Constitution, which has language almost identical to the Fourth Amendment, affords Ohioans coextensive protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245 (1997). Before the issuance of a search warrant, "the judicial officer issuing such a warrant [must] be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden*, 401 U.S. 560, 564 (1971). "Crim.R. 41 incorporates these constitutional principles by requiring judges to only issue warrants after finding that probable cause for the search exists . . . and mandating that the affidavit submitted in support of the warrant request have the following: (1) the name or description of the person or place to be searched; (2) the name or description of the property to be searched and seized; (3) the offenses related to the search and seizure; and (4) the factual basis for the affiant's belief that the property to be seized is located in the place described . . . ." *State v. Myers*, 2015-Ohio-2135, ¶ 9 (9th Dist.), citing Crim.R. 41(C)(1).

**Probable Cause**

{¶14} This Court's review of the trial court's probable-cause determination is based upon that which is found within the four corners of the affidavit Detective Harvey submitted in support of the search warrant. *State v. Castagnola*, 2015-Ohio-1565, ¶ 106 ("[W]hen no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document."). A search warrant may only be issued "'upon probable cause,' meaning only when the affidavit supporting the warrant establishes a 'fair probability that contraband or evidence of a crime will be found in a particular place . . . .'" *State v. Schubert*, 2022-Ohio-4604, ¶ 11, quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

{¶15} "To determine if an affidavit in support of a search is supported by probable cause, a judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (Alteration in original.) *State v. Myers*, 2015-Ohio-2135, ¶ 10, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). "On appeal, the duty of this Court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Curley*, 2024-Ohio-1031, ¶ 9 (9th Dist.), citing *Schubert* at ¶ 11. In doing so, courts consider the totality of the circumstances. *State v. Hoang*, 2012-Ohio-3741, ¶ 50 (9th Dist.) ("[C]ourts view the totality of the circumstances in making probable cause determinations.").

{¶16} "[E]ven though the existence of probable cause is a legal question[,] . . . a warrant should be upheld when the issuing judicial officer had a substantial basis for believing that probable cause existed, regardless of what the reviewing court's independent determination

regarding probable cause might be." *Schubert* at ¶ 11. "[T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus.

*Hearsay*

**{¶17}** Byrd argues, in part, that the trial court erred by denying his motion to suppress because Detective Harvey's affidavit relied upon hearsay statements and unreliable information from confidential informants, which did not establish probable cause. This Court disagrees.

**{¶18}** As this Court has stated, "[i]t is well established that a search warrant affidavit may be based solely upon hearsay information and need not reflect the direct, personal observations of the affiant." *State v. Frazier*, 2010-Ohio-129, ¶ 8 (9th Dist.). If a finding of probable cause is based upon hearsay, then the affidavit must provide a "substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2).

**{¶19}** Here, Detective Harvey averred that he participated in the investigation of Byrd's distribution of controlled substances, including the controlled purchase between the C.I. and Byrd. Detective Harvey also averred that the MEDWAY investigators believed the C.I.'s information was reliable because "his information has been consistently corroborated by independent investigation, corroborated by other witnesses, and corroborated by other information derived through the course of the investigation." As the Ohio Supreme Court has stated, "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *State v. Henderson*, 51 Ohio St.3d 54, 57 (1990), quoting *United States v. Ventresca*, 380 U.S. 102, 111 (1965). Thus, the affidavit reflects

that Detective Harvey reasonably believed the hearsay information was true, and that he had a substantial basis for crediting the hearsay. *See State v. Ramirez*, 2018-Ohio-595, ¶ 44 (5th Dist.), citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978) ("Hearsay information may be relied on by the officer in providing an affidavit for a search warrant if in fact the officer reasonably believes the information to be true."); *State v. Gill*, 49 Ohio St.2d 177, 179 (1977), quoting *Jones v. United States*, 362 U.S. 257, 269 (1960) ("Although affidavits for search warrants may be based on the hearsay testimony of a confidential unnamed informant, they must, in order to insure that magistrates determine probable cause for themselves, incorporate 'a substantial basis for crediting the hearsay.'"). Accordingly, this Court concludes the trial court did not err by rejecting Byrd's argument that the affidavit failed to set forth probable cause because it relied upon hearsay information from unreliable sources.

*Staleness*

{¶20} Byrd also argues that the trial court erred by denying his motion to suppress because Detective Harvey's affidavit relied upon stale facts, which did not establish probable cause. This Court disagrees.

{¶21} This Court has acknowledged that "[a]n affidavit that sets forth the grounds for a search warrant must do so with reference to 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *State v. Corn*, 2021-Ohio-3444, ¶ 19 (9th Dist.), quoting *State v. Myers*, 2015-Ohio-2135, ¶ 18 (9th Dist.).

> While it is true that an affidavit for a search warrant must present timely information, there is no arbitrary time limit for how old the information can be. The problem of stale information normally only arises if a substantial period of time has elapsed between the commission of the crime and the proposed search[.] The alleged facts are timely if they justify the conclusion that the property specified in the warrant is probably on the person or premises to be searched.

(Alteration in original.) *State v. Ruffin*, 2012-Ohio-1330, ¶ 10 (9th Dist.), quoting *State v. Yeagley*, 1996 WL 490259, *3 (9th Dist. Aug. 28, 1996). "The timeliness of information in an affidavit is evaluated according to all of the surrounding circumstances, and a 'primary consideration' is 'whether the affidavit describes a single transaction or a continuing pattern of criminal conduct.'" *Corn* at ¶ 19, quoting *Myers* at ¶ 18.

{¶22} Regarding drug trafficking, this Court has noted that "the passage of time * * * is less significant * * * than in situations where the affidavit relates to a single instance." (Alterations in original.) *Corn* at ¶ 19, quoting *Myers* at ¶ 19. Additionally, "otherwise stale information [that] is corroborated by other information in the affidavit becomes 'refreshed' for purposes of probable cause." *State v. Williams*, 2023-Ohio-4344, ¶ 17 (6th Dist.), quoting *United States v. Redmond*, 475 Fed.Appx. 603, 608 (6th Cir. 2012). Simply put, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *State v. Ingold*, 2008-Ohio-2303, ¶ 22 (10th Dist.).

{¶23} Here, the trial court determined that the affidavit did not rely upon stale facts because the events from 2022 were refreshed by the more recent events from September 2023. This Court agrees.

{¶24} Detective Harvey supported his affidavit with information obtained from September 2022 through September 2023. On September 25, 2023, Detective Harvey applied for and obtained a search warrant for the property. This Court agrees with the trial court's conclusion that the events from 2023 refreshed the events from 2022, especially considering the nature of the charges, i.e., drug trafficking. *See Corn* at ¶ 19. In other words, the facts averred to in the affidavit justified the conclusion that "contraband [was] probably on the person or premises to be searched at the time the warrant issue[d]." *Ingold* at ¶ 22. Accordingly, this Court concludes that the trial

court did not err by rejecting Byrd's argument that the affidavit failed to set forth probable cause because it relied upon stale facts.

**Particularity Requirement**

{¶25} Byrd next argues that the search warrant failed to satisfy the particularity requirement under the Fourth Amendment and Article I, Section 14 of the Ohio Constitution because it authorized an overly broad search and seizure of "computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above devices/hardware)" with no temporal limitation. This Court disagrees.

{¶26} "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The manifest purpose of this particularity requirement was to prevent general searches." *Id.* "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*; *see also* Ohio Const., art. I, § 14.

{¶27} "In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely." *State v. Amodio*, 2012-Ohio-2682, ¶ 7 (9th Dist.), quoting *State v. Overholt*, 2003-Ohio-3500, ¶ 14 (9th Dist.). "A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *State v. Armstead*, 2007-Ohio-1898, ¶ 10 (9th Dist.), quoting *United States v. Harris*, 903 F.2d 770, 775

(10th Cir. 1990). "Simply stated, a search warrant will be held sufficiently particular when it enables a searcher to reasonably ascertain and identify the things that are authorized to be seized." *State v. Swing*, 2017-Ohio-8039, ¶ 40 (12th Dist.).

{¶28} Regarding the lack of a temporal limitation, "[t]he absence of a temporal limitation will not automatically render the warrant a prohibited general warrant." *State v. McCrory*, 2011-Ohio-546, ¶ 38 (6th Dist.). "A temporal limitation in a warrant is merely one indicium of particularity. It is but one method of tailoring a warrant description to satisfy the particularity requirement." *Id.*; *see also State v. Shaskus*, 2016-Ohio-7942, ¶ 44-47 (10th Dist.); *State v. Swing*, 2017-Ohio-8039, ¶ 41 (12th Dist.) ("Though a temporal limitation is one possible method of tailoring a search authorization, it is by no means a requirement.").

{¶29} In support of his argument, Bryd primarily relies upon the Ohio Supreme Court's decision in *State v. Castagnola*, 2015-Ohio-1565. In *Castagnola*, the Court held that the search warrant at issue failed the particularity requirement relative to the search of the defendant's computer. *Id.* at ¶ 66-90. Unlike the drug trafficking charges at issue here, *Castagnola* involved charges related to allegations that the defendant "damaged and egged" the victim's family's cars. *Id.* at ¶ 2, 28. In support of a search warrant related to the defendant's computer, the detective relied upon text messages and an unsubstantiated inference that the defendant looked up the victim's address online.

{¶30} The *Castagnola* Court explained that "[c]ourts have held that the Fourth Amendment does not require heightened protections for computers, nor does it diminish its protections because of the challenges of searching them . . . . The 'bedrock principle' is 'reasonableness on a case-by-case basis.'" *Id.* at ¶ 74, quoting *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011). The Court also explained that "[a] search warrant that includes broad

categories of items to be seized may nevertheless be valid when the description is 'as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* at ¶ 80, quoting *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001).

{¶31} In determining the search warrant failed the particularity requirement, the Court noted that the detective testified at the suppression hearing as to the details of the records and documents he expected to be stored on the defendant's computer. The Court reasoned, in part, that "[u]nder the Fourth Amendment, these details regarding the records or documents stored on the computer should have been included in the search warrant to guide and control the searcher and to sufficiently narrow the category of records or documents subject to seizure." *Id.* at ¶ 87.

{¶32} Here, the charges involved drug trafficking, not charges related to damaging and egging vehicles. *See id.* at ¶ 2, 28. Detective Harvey averred that, in his experience, he had located records related to drug trafficking stored in electronic media of various kinds, including cell phones, jump drives, computers, and tablets. Detective Harvey also averred that "information stored within a computer and other electronic media storage may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion."

{¶33} Unlike the detective in *Castagnola*, there is no indication that Detective Harvey "possessed any more specificity as to the location of computer files concerning appellant's drug activity than set forth in the affidavit." *State v. Gornall*, 2016-Ohio-7599, ¶ 28 (5th Dist.) (distinguishing *Castagnola*). To the contrary, the facts indicate that the search warrant was "'as specific as circumstances and nature of the activity under investigation permit[ted]' and enable[d] the searchers to identify what they [were] authorized to seize." *Armstead*, 2007-Ohio-1898, at ¶

10 (9th Dist.), quoting *Harris*, 903 F.2d at 775 (10th Cir. 1990). Consequently, the trial court did not err when it rejected Byrd's argument that Detective Harvey's affidavit failed to satisfy the particularity requirement. The fact that the search warrant did not specifically include a temporal limitation does not change this fact. *See Swing*, 2017-Ohio-8039, at ¶ 41 (12th Dist.) ("Though a temporal limitation is one possible method of tailoring a search authorization, it is by no means a requirement.").

**{¶34}** In light of the foregoing, Byrd's assignment of error is overruled.

### III.

**{¶35}** Byrd's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.